IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
(ATLANTA)

| | |
|---|---|
| IN RE:<br>Tamerlane Timur Bey, II<br><br>**Debtor(s).** | CASE NO. 26-62896-lrc<br>CHAPTER 7 |
| 2018-4 IH Borrower LP<br><br>**Movant**<br><br>v.<br><br>Tamerlane Timur Bey, II, Debtor(s),<br>Office of the United States Trustee, Trustee[1]<br><br>**Respondents.** | Judge Lisa Ritchey Craig |

**MOTION FOR ORDER CONFIRMING NO STAY IN EFFECT PURSUANT TO 11 U.S.C. § 362(B)(22)**

COMES NOW, 2018-4 IH Borrower LP (hereinafter "Movant"), a creditor and party in interest in the above-captioned case, by and through its undersigned counsel, and, files this request for an order confirming that no automatic stay is in effect in the above-referenced bankruptcy case pursuant to 11 U.S.C. § 362(b)(22) (hereinafter, the "Motion"), respectfully showing this honorable Court as follows:

1.

Tamerlane Timur Bey, II (hereinafter, "Debtor") filed a voluntary petition for bankruptcy protection under Chapter 7 of the Bankruptcy Code on September 25, 2026, and is, therefore, subject to the jurisdiction of the Court.

2.

[1] As of September 27, 2026, no appointed Chapter 7 Trustee appears of-record on this Court's docket

Movant is the landlord for debtor Tamerlane Timur Bey, II ("Debtor"), for that certain residential real property located at 172 N. Mill Road, Atlanta, GA 30328 (the "Property"), as further evidenced by that certain residential lease agreement attached hereto as **Exhibit A**.

3.

This Court has jurisdiction over this Motion pursuant to 11 U.S.C. §§ 362 and 363.

4.

On July 1, 2026, Movant commenced a dispossessory proceeding against Debtor for possession and monetary judgment for the Property due to non-payment of rent. Said dispossessory proceeding was filed with the Magistrate Court of Fulton County, Georgia, as assigned case number 26ED392744 ("Dispossessory").

5.

Debtor filed a timely answer to the Dispossessory; on August 13, 2026, a hearing was noticed in the Dispossessory. At said hearing, Debtor and Movant entered into a consent agreement, wherein Debtor agreed to pay $11,190.35 in certified funds on/before August 27,2026, or a writ of possession would issue ("Order"). A true and accurate copy of said Order is attached hereto as **Exhibit B**.

6.

Debtor failed to comply with the consent Order; resultingly, on or about August 28, 2026, Movant applied for a writ of possession within the Dispossessory. On September 16, 2026, the Magistrate Court of Fulton County granted Movant a writ of possession as to the Property; a true and correct copy of said writ of possession is attached hereto as **Exhibit C**.

7.

Movant obtained a judgment for possession against Debtor prior to the initiation of this Action, with a writ of possession additionally awarded prior to the initiation of this Action authorizing Movant to recover possession of the Property.

8.

Georgia law does not provide for a right of redemption for a residential tenant after a judgment has been entered against said tenant. See generally O.C.G.A. § 44-7-50 *et. seq*.

9.

Notwithstanding the foregoing, Debtor filed an Official Form 101A with this Court and purportedly submitted thirty days' rent. *See* Doc. 5.

10.

Form 101A, as filed by Debtor, similarly acknowledges Georgia law having no right of redemption for a residential tenant after a judgment has been entered against said tenant. *See* Doc. 5 (first checkbox in the certification not checked). *See also* In re Mitchell, 2013 WL 5567200 (N.D. Ga. Aug. 2, 2013) ("Debtor did not make the required certifications regarding her ability to cure the monetary default after the writ of possession had been entered, and the court is not aware of any authority allowing her to do so.")

11.

Debtor's certification fails to comply with 11 U.S.C.A. § 362(l)(1)(A), and any representation to the contrary by Debtor would be knowingly filed in bad faith and without any support under color of Georgia law.

12.

Additionally, Debtor has communicated with both counsel for Movant and the Fulton County Marshal, improperly asserting (via what appears to be the use of generative artificial

intelligence) that an automatic stay is in effect which otherwise inhibits Movant from executing upon the writ of possession to recover possession of the Property under Georgia law. A true and accurate copy of a portion of such correspondence is attached hereto as **Exhibit D**.

13.

Pursuant to 11 U.S.C.A. § 362(b)(22), no automatic stay goes into effect upon the filing of a bankruptcy to otherwise prevent "the continuation of any eviction… by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease… and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor."

14.

No exception to 11 U.S.C.A. § 362(b)(22) otherwise exists, as set forth above.

15.

No automatic stay has gone into effect, as set forth above, and Movant resultingly is authorized under law to proceed to execute on the writ of possession issued by state court prior to the filing of the instant action. *See also* In re Mitchell, 2013 WL 5567200 (N.D. Ga. Aug. 2, 2013) ("[Since Debtor did not certify pursuant to 11 U.S.C.A. § 362(l)(1)(A)], the 30-day delay provided under § 362(l) is not in effect.")

16.

Notwithstanding the foregoing, based on Debtor's ongoing AI-generated communications with the state court and the Fulton County Marshal (who executes setouts as a law enforcement division of Fulton County), Movant harbors under the peril of being subject to the knowledge of a Fulton County Marshal vis a vis bankruptcy law, which poses the very real peril of functionally inhibiting Movant from lawfully executing upon the writ of possession.

Movant seeks an order affirming that the automatic stay is not in effect to otherwise prevent Movant from proceeding with lawfully executing upon the writ of possession issued by the state court pre-petition. In re Mitchell, 2013 WL 5567200 at *2 (N.D. Ga. Aug. 2, 2013) (Judge Diehl issuing order affirming that the automatic stay is not in effect, and that Movant may proceed with recovering possession of the property.)

WHEREFORE, Movant prays for the following relief:

(a) That this Court grant Movant's Request and Issue an Order affirming that no automatic stay is in effect to otherwise prevent execution upon the pre-petition writ of possession as to the Property;

(b) That the Court award Movant its attorney's fees and costs in bringing of this Motion; and

(c) For such other and further relief as this Court deems just and equitable.

Respectfully submitted, this Sunday, September 27, 2026.

THE TOTTEN FIRM, LLC
5579 Chamblee-Dunwoody Rd, Ste B-136
Atlanta, GA 30338
(404) 692-4342 (Telephone)
mft@tottenfirm.com

/s/ Matthew F. Totten
MATTHEW F. TOTTEN
(Georgia Bar No. 798589)
ATTORNEY FOR MOVANT

## CERTIFICATE OF SERVICE

This is to certify that, in accordance with BLR 5005-5 (Bankr. N.D. Ga.), I have this date electronically filed the within and foregoing ***MOTION FOR ORDER CONFIRMING NO STAY IN EFFECT PURSUANT TO 11 U.S.C. § 362(B)(22)*** in the above-captioned contested matter with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all parties or counsel of record, and specifically, to counsel of record for the parties in interest in this matter:

[no such parties currently listed in the Docket]

I have also on this day caused a copy of the pleading to be placed in the first-class United States mail, postage prepaid, addressed to the following recipients not participating in the CM/ECF system as follows

Tamerlane Timur Bey, II, pro se Debtor
172 North Mill Rd
Sandy Springs, GA 30328

Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

Dated: Sunday, September 27, 2026.

THE TOTTEN FIRM, LLC
5579 Chamblee-Dunwoody Rd, Ste B-136
Atlanta, GA 30338
(404) 692-4342 (Telephone)
mft@tottenfirm.com

/s/ Matthew F. Totten
MATTHEW F. TOTTEN
(Georgia Bar No. 798589)
ATTORNEY FOR MOVANT

Docusign Envelope ID: 7EF678FB-38E1-4F0A-8673-B7F93FAF109D

invitation homes

# Summary of Lease Charges

This Summary of Lease Charges ("Summary") is hereby incorporated by reference into and made part of the attached Rental Agreement ("Lease"). Each reference in the Lease to any term of this Summary shall have the meaning as set forth in this Summary. In the event of a conflict between the terms of this Summary and the Lease, the terms of the Lease shall prevail. Any capitalized terms used herein and not otherwise defined shall have the meaning as set forth in the Lease.

**Residence Address:** 172 N Mill Rd, Atlanta, GA 30328

**Lease Term:** 05/21/2026 to 05/20/2027 $ 3299.00

| MONTHLY RENTAL CHARGES | | MOVE-IN COSTS | |
|---|---|---|---|
| Base Rent | 3299.00 | **Refundable Deposits** | |
| Pet Rent | 0.00 | Escrow Fee | 2870.00 |
| Pool Service | 0.00 | Pet Deposits | 0.00 |
| Smart Home | 40.00 | Total Refundable Deposits | 2870.00 |
| Landscaping Fee | 0.00 | **Other Charges** | |
| Air Filter Service | 9.95 | Initial Rent Payment | |
| Internet Package Fee | 85.00 | Non-Refundable Pet Fee | |
| Security Deposit Waiver | 0.00 | Account Setup Fee | |
| HOA Facilities/Amenities Fee | 0.00 | Hold Fee Paid | |
| Utility Admin Fee | 9.95 | **Total Move-In Costs** | |
| Water (Proportionate Share) | 0.00 | | |
| Sewer (Proportionate Share) | 0.00 | ***Move-In Costs are not applicable at Renewal*** | |
| Trash (Proportionate Share) | 0.00 | | |
| Solar (Proportionate Share) | 0.00 | | |
| **TOTAL MONTHLY RENT** | 3443.90 | | |



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

Docusign Envelope ID: 7EF678FB-38E1-4F0A-8673-B7F93FAF109D

# RENTAL AGREEMENT

This **Rental Agreement** ("**Lease**") is entered into on 4/21/2026 ("**Effective Date**") by and between 2018-4 IH Borrower LP, the owner of the Residence ("**Landlord**"), with THR Property Management L.P acting as the designated agent of Landlord ("**Property Manager**"); and

**Resident's Name:** Tamerlane Bey II
**Primary Phone #:** 3106281036

**Resident's Name:**
**Primary Phone #:**

**Resident's Name:**
**Primary Phone #:**

**Resident's Name:**
**Primary Phone #:**

**Resident's Name:**
**Primary Phone #:**

**Resident's Name:**
**Primary Phone #:**

**Resident's Name:**
**Primary Phone #:**

**Resident's Name:**
**Primary Phone #:**

(collectively, "**Resident**" whether one or more).

1. **RENTAL PROPERTY.** Resident agrees to rent from Landlord and Landlord agrees to rent to Resident the real property and any other improvements at the address specified on the Summary page (collectively, the "**Residence**" or "**Premises**"). If this is a renewal or extension of an existing lease agreement between Landlord and Resident, any current balance owed by Resident to Landlord shall not be canceled or extinguished by Landlord and Resident entering into this Lease and shall be a continuing obligation of Resident until paid in full.

2. **OCCUPANTS.** In addition to Resident, the following individuals will also reside at the Residence ("**Occupants**"): ______________________________________________.

**2.1.** Resident represents, warrants, and covenants that all persons who will reside at the Residence as Occupants are listed above. All Occupants eighteen (18) and older are subject to the same criminal and credit background approval required of Residents. No one else may occupy the Residence. Persons not listed above must not stay in the Residence for more than seven (7) consecutive days without Landlord's prior written consent, and no more than thirty (30) days in a calendar year. Any new resident or occupant will require the prior written acceptance and approval of Landlord. If an occupancy change is accepted and approved by Landlord during the Lease Term, a new lease or an amendment to this Lease shall be executed to memorialize such occupancy change as required by Landlord. While only the specifically identified "Resident" above is obligated to pay the Rent, all references in this Lease to **"Resident," "Resident Party"** or "**Resident Parties**" shall include Resident, the Occupants, and any guests or invitees of Resident or the Occupants. It is the intent of the parties that all Occupants, including minor children, are intended to be bound by the terms of this Lease. As such, parties agree that the Occupants, including any minor children, are intended to be third-party beneficiaries of the Lease, and that the Resident's execution of this Lease is intended to be Resident's signature on behalf of the Resident individually, as well as on behalf of any minor Occupants. By signing the Lease, the Resident affirms that the Resident has legal custody or control over any minor Occupants and has legal authority to execute the Lease on behalf of the minor Occupants.


Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

**3. LEASE TERM.** The term of this Lease (the "**Lease Term**") shall commence on 05/21/2026 (the "**Commencement Date**") and end on 05/20/2027 at 5:00 p.m. local time where the Residence is located. Resident shall vacate the Residence immediately upon termination of the Lease unless: (a) Landlord and Resident have extended this Lease in writing or signed a new rental agreement, or (b) a month-to-month tenancy is created pursuant to the following paragraph.

**3.1. MONTH-TO-MONTH TENANCY.** The Lease Term shall become month-to-month if, upon expiration of the initial Lease Term, the Lease Term has not otherwise been terminated, extended, or renewed. Landlord may increase the monthly Rent by giving Resident written notice of such increase at least thirty (30) days prior to the commencement of the rental period for which the adjustment will apply or such notice period as may be required by Applicable Law. Resident may remain in possession of the Residence and the tenancy will then be on a month-to-month basis at the increased monthly Rent rate and subject to all of the terms and conditions of this Lease until either party terminates the tenancy in accordance with this Lease and Applicable Law. The term "**Applicable Law**" shall mean all laws, ordinances, directives, temporary orders, and rules and regulations enacted now or hereinafter by any governmental authority with jurisdiction over the Residence.

**3.2. NOTICE TO VACATE.** Prior to the expiration of the Lease Term, subject to Applicable Law, either party may terminate the Lease by providing at least sixty (60) days advance written notice (sixty (60) days for a month-to-month tenancy) to the other party. Rent shall be due and payable through the end of the notice period or the expiration of the Lease Term, whichever occurs later. Resident's failure to provide the full sixty (60) days' advance notice of intent to terminate the Lease (sixty (60) days for a month-to-month lease) will result in Resident being charged for the balance of the notice period in an amount equal to the daily pro rata rent, not to exceed two months' rent.

**4. RENT AND SECURITY DEPOSIT.**

**4.1. SECURITY DEPOSIT.** The amount set forth on the Summary as Escrow Fee ("**Escrow Fee**") shall be deposited with Landlord within two (2) calendar days of full execution of the Lease. In the event the Escrow Fee is not paid within two (2) calendar days, Landlord shall have the right, in its sole discretion, to terminate this Lease. In the event Resident fails to move into the Residence in accordance with this Lease, Landlord will return the Escrow Fee to Resident within 14 days of Resident's notice to Landlord, less $500.00 which Landlord will retain. Within one week of moving into the Residence, Resident must participate in Landlord's resident orientation, whereby Landlord and Resident may conduct a walkthrough of the Residence and Resident may inspect the Residence for any existing damage. Following the resident orientation, the Escrow Fee will be converted to Resident's security deposit **("Security Deposit")** as security for Resident's payment and performance of the obligations under this Lease. Subject to Applicable Law, all or any portion of the Security Deposit may be used or retained by Landlord as reasonably necessary to: (a) clean, repair, and restore the Residence and any appliances, furniture, fixtures, equipment, and other property supplied by Landlord to its condition on the Commencement Date, excepting normal wear and tear; or (b) cure Resident's default in payment of any Rent, late charges, dishonored check charges, utility charges, or other charges which may be owed by Resident pursuant to this Lease. The retention of the Security Deposit shall not limit Landlord's right to proceed against Resident for claims above the amount of the Security Deposit. The Security Deposit shall not be used by Resident in lieu of payment of Rent, Late Charges, or other amounts owed. No interest shall be paid on the Security Deposit unless required by Applicable Law. The Security Deposit shall be held in a separate account at Bank of America, Northlake Branch, 4144 Lavista Rd, Tucker, GA 30084.



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

Notwithstanding the foregoing, if this Lease is a renewal or extension of an existing lease agreement between Resident and Landlord, and the Security Deposit was previously paid to Landlord pursuant to Resident's existing or prior lease agreement that same amount has been transferred and deposited with Landlord as security for Resident's payment and performance of the obligations under this Lease.

**4.2. RENT.** "Base Rent" shall mean the monthly rent amount as outlined on the Summary. Base Rent shall increase to $_N/A______ beginning on _N/A______. "Rent" shall mean the total monthly rent as outlined on the Summary. Resident shall pay Rent in advance, on the 1st day of each month without demand or offset and with no grace period. **All Rent payments should be made electronically as stated in Section 4.4, with the exception of payments following Landlord serving a written notice of non-payment of Rent or if payments of Rent are returned for non-sufficient funds, in which case payments shall be made by personal check, cashier's check or certified check.**

**4.3. INITIAL PAYMENT.** If this is a new lease between Resident and Landlord (and not a renewal or extension of an existing lease agreement between Resident and Landlord), upon Landlord's acceptance of this Lease, Resident shall pay one electronic payment or cashier's check in the amount of the Security Deposit, and prior to the Commencement Date also pay one separate electronic payment or cashier's check in the amount of the Total Move-In Costs on the Summary of this Lease net any previously paid Security Deposit (collectively, the "Initial Payment"). If the Commencement Date is on or after the twentieth (20th) day of the month then the Initial Payment will include the prorated rent for the initial month in addition to the full month's rent for the subsequent month. If Resident's payment for any portion of the Initial Payment is dishonored for any reason, Landlord shall have the immediate right to terminate this Lease, upon notice to Resident of such termination, in accordance with Applicable Law.

**4.4. METHOD OF PAYMENTS.** The Security Deposit and all Rent shall be paid to Landlord or such other agent of Landlord as Landlord may designate by written notice to Resident. Rent payments will only be accepted from Resident or as required by Applicable Law. If Landlord agrees or is required by Applicable Law to accept payment of Rent from a third party, acceptance of such payment shall not create a tenancy between Landlord and the third party. **Subject to Applicable Law and pursuant to Section 4.2, monthly installments of Rent should be paid in U.S. Currency by electronic payment.**

**Electronic Payment:** Resident shall use the online resident portal to pay Rent via electronic payment at www.invitationhomes.com, following the instructions for current residents to Pay My Rent. If Resident elects to pay online by credit card instead of ACH transfer, a convenience fee or surcharge may be charged by the merchant service provider in an amount not to exceed the maximum amount permitted by Applicable Law. Landlord reserves the right to pass through such charge to Resident.

**4.5. LATE CHARGES.** If the total Rent is not received by 11:59 p.m. on the third (3rd) day of the month, Resident agrees to pay a late charge equal to $115.00 (the "**Late Charge**"). Resident acknowledges that late payment of Rent will cause Landlord to incur costs and expenses, including processing, enforcement and accounting expenses, and charges imposed on Landlord, the exact amounts of which are extremely difficult and impractical to determine. Resident agrees that the Late Charge represents a fair and reasonable estimate of the costs Landlord may incur by reason of late payment. The Late Charge, which shall be considered additional Rent, does not establish a grace period; Landlord may serve a written notice of non-payment of Rent required by Applicable Law if Rent is not paid on its due date. If Landlord serves a written notice of non-payment of rent, Landlord may require that the



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

payment called for by the notice be made by certified cashier's check, in person, at the office location designated by Landlord.

**4.6. NON-SUFFICIENT FUNDS.** In addition to any Late Charges, Resident also agrees to pay a non-sufficient funds fee ("NSF Charge") of $30.00 for each check or payment that is not honored by Resident's bank or financial institution, which NSF Charge will not exceed the maximum amount that may be charged pursuant to Applicable Law. In the event that any payments of Rent during the Lease Term are returned due to non-sufficient funds, Resident may be "locked out" of the online payment system and shall be required to make such payments, together with any and all of Resident's outstanding balance, Late Charge, NSF Charge, and any other amounts due to Landlord hereunder, by certified cashier's check, in person, at the office location, designated by Landlord in connection with this Lease. Only upon personal receipt by Landlord or Landlord's representative of such payment shall Resident be able to make subsequent electronic payments online.

Notwithstanding the foregoing, if any payments of Rent are returned due to non-sufficient funds during the Lease Term, Resident acknowledges and agrees that Landlord may, in its sole discretion, upon notice to Resident require Resident to make all subsequent payments required hereunder by certified cashier's check in person at the office location, designated by Landlord.

Any Late Charge or NSF Charge will be deemed additional Rent and must be paid with the current installment of Rent. Landlord's acceptance of any Late Charge or NSF Charge will not constitute a waiver as to any default of Resident. Landlord's right to collect a Late Charge or NSF Charge will not be deemed an extension of the date Rent is due or prevent Landlord from exercising any other rights and remedies under this Lease or Applicable Law.

**4.7. APPLICATION OF PAYMENTS.** Unless otherwise required by Applicable Law, payments received will be applied, without regard to their characterization or earmarking by Resident, as follows: (i) first to any arrears for Base Rent from previous month(s), (ii) then to the Base Rent for the current month (iii) then to other amounts owed that were accrued under the terms of this Lease.

**4.8. ACCOUNT SET UP FEE.** If this is a new lease between Resident and Landlord, a one-time nonrefundable Account Set Up Fee in the amount outlined on the Summary shall be charged to Resident as additional rent and paid to Landlord with the Initial Payment to cover the overhead costs associated with Landlord's preparation and administration of this Lease.

**4.9. DISCLOSURE TO CREDIT BUREAUS.** Resident acknowledges that and consents to Landlord or Landlord's agent disclosing information about Resident and Resident's tenancy, including but not limited to the amount and timing of rent payments and any debt outstanding to credit reporting agencies, which may then be used in a tenant record, credit report and credit score for the Resident and shared with other landlords and credit grantors. Resident further acknowledges that and consents to Landlord or Landlord's agent periodically making soft inquiries on Resident's credit profile throughout the term of the Lease. Such inquiries will have no impact on Resident's credit score and will not be used by Landlord as the sole reason for any adverse action taken against Resident including any decision not to offer Resident the opportunity to renew the Lease at the end of the term.

**5. ANIMALS.** Prior to Move-In, Resident must execute the attached Animal Addendum and abide by its terms for the duration of the Lease Term. Resident shall not bring or allow any animal onto the Residence property, even temporarily, at any time without Landlord's prior written approval unless otherwise permitted by Applicable Law.



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

If Resident keeps a dog or cat that is not considered a service, assist, or companion animal ("Pet") at the Residence, Resident must pay additional fees related to the Pet and, if applicable and in Landlord's sole discretion, certain non-compliance fees as further described and in the amounts set forth in the Animal Addendum and consistent with Applicable Law.

Service, assist, or companion animals for the assistance of a Resident or Resident Parties with a disability shall be permitted by Landlord upon Resident's advance request, provided that Landlord may request documentation or other reasonable evidence verifying disability and a disability-related need for the animal, in compliance with Applicable Law.

**6. MOVE-IN/MOVE-OUT.**

**6.1. MOVE-IN.** Prior to the Commencement Date, Resident shall have the right to inspect the Residence, including all appliances, landscaping, fixtures, improvements, equipment, hardware, smoke detector(s) and carbon monoxide detector(s), if any, located at the Residence. Resident shall confirm (a) that the Residence and all such items are clean, in good working order, and fit for use under the Lease, and (b) that the size, number, and features of all rooms and any parking areas or garage at the Residence are approved for Resident's use. Resident must notify Landlord or Landlord's agent of any pre-existing defective conditions within 48 hours of Resident's move-in either in person, via email, or otherwise designated by Landlord. Otherwise, Resident accepts the Residence in the current "As-Is" condition and warrants that Resident has been given adequate opportunity to fully inspect the Residence and that Resident accepts the Residence, together with all furnishings, if applicable, as being in good condition. Only items included in Resident's notice to Landlord described above shall be accepted as defective, missing, or in need of remedial action. The absence of such notice shall be conclusive proof that there is no defective or hazardous equipment or conditions existing as of the start of the tenancy. Resident agrees and understands such notice is not a request for repairs. Any required repairs will need to be submitted through a separate work order.

**6.2. MOVE-OUT.** Upon vacating the Residence, Resident shall remove all personal possessions and rubbish, steam clean all floors in the Residence, and leave the Residence in as good or better condition as the condition on the Commencement Date, excepting normal wear and tear. Upon move-out, if Resident chooses to have the carpets cleaned, such cleaning must be performed by a third-party professional carpet cleaning service reasonably acceptable to Landlord and receipt for such cleaning services must be provided to Landlord. Unless the carpet is cleaned in the manner provided herein, Landlord reserves the right to use a portion of the Security Deposit to professionally clean the carpets. Resident also shall return all keys and garage door openers, if applicable, or be liable for the replacement cost thereof, and shall provide Landlord with a written statement of forwarding address. Within the time required by Applicable Law, Landlord will provide Resident an itemized written statement of any amounts deducted and the reasons for the deductions from Resident's Security Deposit, along with a check for any balance of the Security Deposit due to Resident. Landlord may deliver the written statement and balance of the Security Deposit personally to Resident, or by mailing the statement and balance of the Security Deposit to Resident at Resident's forwarding address, or if that address is unknown, at Resident's last known address. The retention of the Security Deposit shall not limit Landlord's right to proceed against Resident for claims above the amount of the Security Deposit.

**6.3. Pre-Move-Out Inspection and Repairs:** (i) After giving or receiving notice of termination of a tenancy, or before the end of the Lease, Resident may request and coordinate with



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

Landlord to have an inspection of the Residence take place prior to termination of the Lease; (ii) If Resident requests such an inspection, Resident will be given an opportunity to remedy identified deficiencies caused by Resident or by Resident Parties prior to termination, consistent with the terms of this Lease; (iii) Any repairs or alterations made to the Residence as a result of this inspection (collectively, "Repairs") must be made at Resident's expense and only after obtaining the prior written approval of Landlord; (iv) Repairs may be performed by Resident or through others, who have adequate insurance and licenses and are approved by Landlord; (v) The work must comply with Applicable Law, including governmental permit, inspection, and approval requirements; (vi) Repairs must be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials; (vii) Landlord may request that Resident: (a) obtain receipts for Repairs performed by others; (b) prepare a written statement indicating the Repairs performed by Resident and the date of such Repairs; and (c) provide copies of receipts and statements to Landlord prior to termination. The pre-move out inspection is done solely as a courtesy and Landlord is not waiving any additional damages or claims it may find after Resident has vacated and returned possession. Comments or suggestions made during the pre-move out inspection do not create any warranty or guarantee as to amounts Resident may be liable, or not liable, for.

**7. CONDITION OF RESIDENCE.** Landlord makes absolutely no warranties or representations about the neighborhood or the condition of the Residence, the improvements, utilities, electrical, plumbing, or appliances, except to the extent as required by Applicable Law. Landlord shall not be responsible for loss or damage caused by failure of any appliance (including loss of or damage to food or other perishables) in the event an appliance ceases to operate properly. Resident must satisfy himself or herself prior to move-in as to the neighborhood or area conditions, including schools, proximity and adequacy of law enforcement, crime statistics, proximity of registered felons and other offenders, fire protection, other governmental services, availability, adequacy, and cost of any wired and/or wireless internet connections, other telecommunications or other technology services and installations, proximity to commercial, industrial, or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, cemeteries, facilities and condition of common areas, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements, and preferences of Resident.

**8. USE.** Resident shall not use or permit the Residence to be used for any purpose other than as the principal and primary residence of Resident and any Occupants. Resident agrees that, subject to Applicable Law, the Residence will not be used for operation of a business or other commercial enterprise without Landlord's prior written consent, nor will Resident utilize the Residence for any purpose or in any manner which violates applicable state, federal, or local law or the covenants, conditions, or rules of any applicable homeowner association. Resident is strictly prohibited from subletting all or any portion of the Premises.

**9. NOTICES.** Unless another method of delivery is permitted by Applicable Law, any notice to Landlord or Landlord's agent, including Property Manager, shall be in writing and delivered personally by hand, or by first class U.S. mail or express or overnight delivery to Property Manager at the address below, which address is subject to change by written notice. Except as otherwise stated in this Lease, and subject to Applicable Law, a notice from Landlord to Resident may be delivered by email to the email address(es) on file.



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

Docusign Envelope ID: 7EF678FB-38E1-4F0A-8673-B7F93FAF109D

The Property Manager identified above is authorized to manage the Residence and authorized to act for and on behalf of Landlord for service of process, prosecuting eviction actions, and for receiving notices and demands.

Notwithstanding anything in this section to the contrary, a Notice to Vacate pursuant to 3.2 Notice to Vacate, from Resident by email will be accepted by Landlord, and email notices from Landlord to Resident concerning the Lease status, termination, renewal, non-renewal and change in terms will be deemed accepted by Resident.

**10. UTILITIES.** Resident is responsible for payment of all utility charges incurred during the Lease Term unless prohibited by Applicable Law. Subject to Applicable Law, and except as expressly provided herein, Resident shall place all utilities, including all those specified in the attached Utilities Addendum, in Resident's name as of the Commencement Date, and shall pay all charges and related costs directly to the provider until Resident terminates such services. Resident is required to show proof of utility commencement prior to move-in. Resident's failure to provide such evidence shall be a default under this Lease, entitling Landlord to enforce all available remedies. Utilities that require proof are electricity, gas, water, sewer, and garbage services. In the event that Applicable Law requires Landlord to pay for any utility directly, Resident acknowledges and agrees that Resident shall be obligated to reimburse Landlord for any such amounts paid by Landlord to utility providers, which reimbursement shall be payable electronically as part of Resident's Rent payment, unless some other form of payment is afforded to Resident in accordance with Applicable Law. If for any reason Resident fails to transfer or maintain all utilities and services in Resident's own name, Resident agrees to reimburse Landlord the full cost of Resident's utility usage and agrees to pay to Landlord the Utility Service Fee in the amount described in the Utilities Addendum for each utility bill received by Landlord. Resident shall not allow electricity or other utilities to be disconnected or discontinued for any reason or by any means (including nonpayment of bill) until the end of the Lease Term or renewal period. If at any time any utility shall be turned off or discontinued due to nonpayment by Resident, Resident shall be in default under this Lease for the health and safety violation, and Landlord may, terminate Resident's occupancy of the Residence immediately and commence eviction and collection proceedings, subject to Applicable Law.

If any utilities are not separately metered or submetered, Resident shall pay Resident's proportional share, as reasonably determined and directed by Landlord in accordance with Applicable Laws. Resident shall obtain Landlord's prior written approval, which approval may be withheld in Landlord's sole and absolute discretion, prior to adding any telephone, cable, or data lines to the Residence. Resident shall cooperate with any conservation and recycling program adopted and implemented by Landlord, if any. Landlord does not represent or warrant that any utilities servicing the Residence will not be interrupted because of repairs or alterations to the Residence, fire or other casualty, acts of God, any labor controversy, or other events beyond the control of Landlord. Any such interruption shall never be deemed to be an eviction of Resident or a disturbance of Resident's use or occupancy of the Residence or render Landlord liable to Resident for damages. Notwithstanding anything contained in this Lease to the contrary, Landlord does not represent or warrant the availability of telephone service, internet service, satellite or cable television service, or any other service to the Residence, and no such services



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

are guaranteed to be available to the Residence.

Notwithstanding anything to the contrary in this Section, Landlord may, at its option and in its sole discretion, elect to contract directly with the utility service providers providing utilities or services to the Residence, including, without limitation, water, garbage and refuse removal, sewer, natural gas, and electricity. In the event Landlord elects to contract for utilities directly with the utility or service providers, then Resident must reimburse Landlord for all charges incurred by Landlord along with the Utility Admin Fee and any set-up charges (all such charges being referred to in this Lease as the "Utility Charges") within fifteen (15) days of Landlord's request therefore accompanied by an invoice documenting such Utility Charges owed by Resident. The Utility Charges will be deemed additional "Rent" under this Lease so that Resident's failure to pay the Utility Charges when due or failure to place and continuously maintain utilities and services in Resident's name, if applicable, will constitute a default under this Lease.

**11. COMPLIANCE WITH RULES AND REGULATIONS.** As provided by Applicable Law, Landlord will have the right to establish and, from time to time, change, alter, and amend, and to enforce against Resident reasonable rules and regulations as may be deemed necessary or advisable for the proper and efficient operation, maintenance, and repair of the Residence. Resident will observe and comply with all reasonable and nondiscriminatory rules and regulations governing the Residence that are posted on the Residence, attached hereto and incorporated herein by this reference, or as may from time to time be delivered to Resident (the "Rules and Regulations"). Resident and any Resident Parties will observe and comply with the Rules and Regulations and with such amendments and additional Rules and Regulations as Landlord may adopt, effective ten (10) days after Landlord gives Resident written notice thereof, or as may be required by Applicable Law. A violation of the Rules and Regulations after such notice shall be a default under this Lease.

**12. PROHIBITED ACTIVITY.** In addition to any requirements established by the municipality or county in which Residence is located, Resident or any Resident Party, shall not (a) engage in criminal activity or any act intended to facilitate criminal activity on or near the Residence, (b) permit the Residence to be used for or to facilitate criminal activity regardless of whether the individual engaging in such activity is a member of the household or a guest; (c) engage in any drug-related activity, including but not limited to, growing, producing, manufacturing, cultivating, possessing with intent to manufacture, selling, using, storing, keeping, or distributing marijuana or any controlled substance (legal or illegal) or drug paraphernalia at or from the Residence or otherwise; (d) engage in any illegal activity, including but not limited to, prostitution, criminal street gang activity, threatening or intimidating assault, including the unlawful use or possession of firearms, on or near the Residence, or threaten the health, safety and/or welfare of Landlord, its agents, other Residents, or neighbors in any manner that constitutes waste or nuisance upon or about the Residence; or (e) disrupt or interfere with Landlord's business operations, or communicate with Landlord, Landlord's agents, or their employees in an unreasonable, discourteous, rude, or hostile manner. Resident understands and agrees that the use, possession, manufacturing or distribution of marijuana, whether medical or recreational, is strictly prohibited and constitutes a material and irreparable breach of this Lease. Resident agrees and authorizes Landlord to use any arrest record or police-generated reports referring to Resident as reliable direct evidence of Resident's conduct or violation of this section.

**VIOLATION OF ANY OF THE PROVISIONS OF THIS SECTION, OR OF ANY FEDERAL OR APPLICABLE LAWS, SHALL BE A SERIOUS, MATERIAL, AND IRREPARABLE VIOLATION OF THIS LEASE AND GOOD CAUSE FOR IMMEDIATE TERMINATION OF THE TENANCY.**



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

## 13. MAINTENANCE.

**13.1. LANDLORD'S MAINTENANCE OBLIGATIONS.** Maintenance and repairs of items that significantly impact habitability of the Residence as determined by Landlord in its sole and absolute discretion, or by Applicable Law, shall be deemed "**Major Repairs.**" Landlord shall be responsible for Major Repairs, including repairs to heating or air conditioning systems, roofing, and mechanical, electrical, and defective plumbing systems.

Landlord may, at Landlord's sole discretion, hire contractors to perform maintenance or repairs at the Residence; however, no contractor shall be considered an employee of Landlord. Resident shall notify Landlord promptly if any contractor fails to perform requested maintenance or repairs. Notification to a contractor of any further maintenance or repair request does not constitute sufficient notice to Landlord, and Resident agrees to make all maintenance and repair requests directly to Landlord in writing.

**13.2. RESIDENT'S MAINTENANCE OBLIGATIONS.** Resident shall, at all times, use, operate, and safeguard the Residence, including any and all furnishings, improvements, equipment, hardware, appliances, landscaping, fixtures, and all mechanical, electrical, gas, and plumbing fixtures located at the Residence, and maintain, at Resident's own expense, the same in a clean and sanitary condition and perform all other maintenance obligations imposed upon Resident under this Lease. Resident shall be responsible for the performance of all maintenance and repairs that do not constitute a Major Repair and are not Landlord's obligation pursuant to Applicable Law. Resident's maintenance obligations shall include, without limitation, (a) following all maintenance recommendations of Landlord and any manufacturer recommendations for appliances, equipment, plumbing, and other fixtures and furnishings, (b) maintaining the Residence in a clean, sanitary condition, (c) keeping all drains clear and free of hair, obstructions, and any foreign matter and repair and maintenance of any related drain and sink backups or blockages, (d) promptly removing any standing water, excess moisture, or damp conditions at the Residence to prevent mold growth or other damage, (e) regularly changing and cleaning all vents, filters, and fans located in the Residence (including the appliances and heating, ventilating, and any cooling systems), (f) replacing light bulbs, (g) checking and maintaining all smoke and carbon monoxide detectors and replacing batteries as needed, (h) properly ventilating kitchen and bathrooms, (i) routine insect and pest control, (j) maintenance of exterior landscaping as set forth in the Landscaping Addendum, (k) keeping sidewalks, driveways, and garages free from dirt and oil stains, (l) power washing the Premises as needed up to ten feet high, (m) keeping gutters less than 10 ft. in height clean and free from debris, and (n) otherwise employing proper maintenance activities at the Residence in accordance with the terms of this Lease to maintain the Residence in a good condition of maintenance and repair. Resident shall immediately report to Landlord, in writing, conditions posing any problem, failure, malfunction, or damage at the Residence. Resident shall not disable or tamper with any smoke detectors or carbon monoxide detectors installed in the Residence and shall maintain all such detectors in good working order and immediately report to Landlord in writing if any detector becomes inoperable or nonfunctional. Resident shall take all reasonable and customary measures and shall comply with any emergency and temporary directives from law enforcement, to protect the Residence and Resident's personal property from damage from natural disasters (such as hurricanes, tornadoes, flooding, fires, and freezing) and shall follow any evacuation orders. The foregoing includes protecting pipes and other parts of the Residence during times of freezing temperature. Landlord may, from time to time, provide Resident with additional information or instructions regarding care of the Residence, including during times of disasters and severe weather, and Resident agrees to comply with such information or instructions.



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

Resident shall be responsible for any costs incurred by Landlord in inspecting the Residence and making repairs required due to Resident's failure to maintain the Residence as required under this Lease or due to damage that occurs while the Residence is in Resident's control and is not caused by weather, natural disaster, or Landlord. Resident shall also be responsible for any costs incurred in inspecting or repairing damage caused by Resident's failure to promptly report needed repairs. Resident's failure to maintain any item for which Resident is responsible will give Landlord the right to hire a vendor of its choosing to perform such maintenance and charge Resident to cover the cost of such maintenance. Resident shall be obligated to reimburse Landlord for all costs incurred by Landlord in performing such repairs as additional rent, including any costs associated with management of vendors and administration of work.

Resident must be physically present on the day of scheduled repair work to grant access to Landlord's vendors. Resident will be charged a $75.00 fee ("**Trip Fee**") if repairs or service must be rescheduled due to Resident's failure to be present or grant access on the scheduled date. All such charges shall be payable as additional rent. If Landlord is required because of the actions or inactions of Resident or any Resident Party to inspect the Residence or perform repairs, Landlord shall have the right to charge for all costs of such inspection and repairs. Routine repairs and maintenance that may be necessary at the Residence shall not excuse Resident from the timely payment of Rent.

**14. ALTERATIONS.** Other than as specifically outlined herein, Resident will not make any alterations, modifications, or improvements in or about the Residence (collectively referred to as "**Alterations**") without the prior written consent of Landlord. Such Alterations include, but are not limited to: painting, wallpapering, finishing, coating, replacing, modifying, sampling, testing, analyzing, or evaluating any interior or exterior building materials or adding or changing locks at the Residence. In addition, Resident shall not install any fixtures in the exterior of the Residence (including above-ground pools), display any signs or exterior lights on the Residence (except temporary seasonal decorations), and no awnings or other projections shall be attached to the outside of the Residence without first obtaining the written consent of Landlord, which consent may be withheld in Landlord's sole and absolute discretion. Resident shall be required to obtain all necessary permits required by Applicable Law before commencing work on a Landlord-approved Alteration. Any work performed on the Residence, whether by Resident or other parties, shall be considered an independent contractor or agent of Resident and not an employee or agent of Landlord. Resident further warrants that Resident will be responsible for any damage or injury resulting from such work and will defend, indemnify, and hold harmless Landlord and Landlord's agents for, from, and against all claims, losses, and damages, including mechanic's and other liens. Prior to commencing any Alterations, Resident shall provide Landlord with thirty (30) days' notice to allow Landlord to post any notices of non-responsibility or such other notices permitted by Applicable Law. At Landlord's sole and absolute discretion, any permitted Alterations of the Residence shall be removed by Resident at Resident's sole cost and expense and the Residence restored to its original condition prior to the end of the tenancy unless Landlord gives Resident written notice that all or any designated portion of said Alterations shall remain in the Residence, in which event all improvements to the Residence shall be the property of Landlord and shall remain attached to and be a part of the Residence when Resident vacates, subject to Applicable Law.

**15. PEST CONTROL.** Resident agrees to take all reasonable steps to maintain the cleanliness and proper housekeeping of the Residence, including, without limitation, ensuring the conditions at the Residence are not conducive to the presence, proliferation, or infestation of insects, bed bugs, rodents, or other pests. Resident is responsible for keeping the Residence clean and free of all pests and, at its sole cost and expense, shall be responsible for all pest control.



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

Resident agrees that, upon notification or reasonable belief of a pest infestation, Landlord and its agents shall have access at reasonable times, subject to the notice requirements under this Lease and Applicable Law, to inspect the Residence and Resident's furnishings, clothing, possessions, and any other personal property present in the Residence. Resident and any Resident Parties shall cooperate and not interfere with inspections or pest control treatments. Subject to Applicable Law, Landlord shall have no responsibility for any damage or injury to Resident or any other person or property at the Residence as a result of pests or any pest control treatment.

Landlord shall arrange for treatment of the Residence at no cost to Resident if a pest infestation is reported to Landlord in writing within thirty (30) days of the Commencement Date. Resident hereby accepts and assumes all responsibility for all pest control thereafter, including but not limited to bed bug infestations, subject to Applicable Law. Any pests, including insects and rodents, not reported to Landlord in writing within the first thirty (30) days will be presumed to have entered the Residence after the start of Resident's residency.

**16. ALARM SYSTEMS.** Resident may arrange for the installation of an alarm system (the "**Alarm System**") at the Residence, subject to the following: (a) Resident shall engage a reputable, licensed and bonded security company for the installation of the Alarm System and for the provision of the resulting security service; (b) Resident shall be solely responsible for the full cost of the Alarm System, including all installation, service, permit costs, and maintenance fees; (c) Resident shall reimburse Landlord, immediately upon demand, for any amounts expended by Landlord in connection with Resident's default under Resident's agreement with its Alarm System provider, provided however that Landlord shall not be a party to any such agreement and shall bear absolutely no liability thereunder; and (d) upon the expiration or earlier termination of this Lease, Resident shall cause all components of any Alarm System to be removed, shall cancel the service, and shall restore the Residence to at least as good a condition as prior to the installation of the Alarm System.

**17. STORAGE.** Resident must store only personal property Resident owns and must not store property claimed by another or in which another has any right, title, or interest. Resident must not store any flammable materials, explosives, hazardous waste or other inherently dangerous material, or illegal substances. Basements are known to be prone to flooding and moisture; Resident is advised not to store any personal belongings in the basement. No personal property may be stored outside, but for patio furniture.

**18. DEFAULT.** Resident will be in default under this Lease if Resident (i) fails to pay Rent or other charges when due, or (ii) fails to perform any other obligation or duty of Resident under this Lease, which failure to pay or perform continues after the delivery of written notice to Resident of such default in the manner required by Applicable Law (an "Event of Default"). In no event shall a cure period be given for any material and irreparable defaults. Any notice required to be given for Resident to be in default hereunder will not be deemed to be in addition to any statutorily required notice if the notice given hereunder otherwise complies with the terms of the applicable statute. Resident understands and agrees that each of the obligations imposed by this Lease shall be regarded as material in nature, and violation of any such obligation shall entitle Landlord to exercise those remedies provided by Applicable Law, this Lease, or in any separate agreement between Landlord and Resident whether such document is incorporated herein or not.

**18.1.** Resident is hereby notified that a negative credit report reflecting on Resident's credit record may be submitted to a credit reporting agency if Resident fails to fulfill the terms of the Lease



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

by failing to pay Rent on time.

**18.2.** Resident's obligation to pay rent during the Term or any renewal term will continue and will not be waived, released or terminated by the service of a notice, demand for possession, notice of termination of tenancy, the filing of a forcible entry and detainer action, or judgment for possession or any other act resulting in termination of Resident's right of possession.

**19. REMEDIES.** After the occurrence of an Event of Default, Landlord will have the right to the following remedies. These remedies are not exclusive; they are cumulative and in addition to any remedies allowed by Applicable Law or in equity.

**19.1.** The immediate option to terminate this Lease and all rights of Resident hereunder by giving Resident written notice of such intention to terminate, and pursuing applicable legal action, in which event Landlord may recover from Resident all of the following: (i) any unpaid Rent which had been earned at the time of such termination; plus (ii) the amount by which the unpaid Rent which would have been earned after termination until the time of award exceeds the amount of such rental loss Resident proves reasonably could have been avoided; plus (iii) the amount by which the unpaid Rent for the balance of the term exceeds the amount of such rental loss that Resident proves reasonably could be avoided; plus (iv) any other amount necessary to compensate Landlord for all the detriment proximately caused by Resident's failure to perform his or her obligations under this Lease, including, but not limited to: brokers' commissions; the costs of refurbishment, alterations, renovation, and repair of the Residence reasonably incurred for the sole purpose of reletting the Residence; and removal (including the repair of any damage caused by such removal) and storage (or disposal) of Resident's personal property, equipment, fixtures, alterations, and any other items which Resident is required under this Lease to remove but does not remove; plus (v) at Landlord's election, such other amounts in addition to or in lieu of the foregoing as may be permitted by Applicable Law; plus (vi) the amount of any concessions provided to Resident by Landlord in connection with this Lease at the time the parties entered into this Lease and/or at the time of Resident moving into the Residence.

**19.2.** Landlord, at any time after Resident commits a default, may cure the default at Resident's cost. If Landlord, at any time, by reason of Resident's failure to cure a default within the required timeframe, pays any sum or does any act that requires the payment of any sum, the sum paid by Landlord shall be due immediately from Resident to Landlord and shall bear interest from the date the sum is paid by Landlord until Landlord is reimbursed by Resident, at the lesser of (a) ten percent (10%) per annum or (b) the maximum rate permitted by Applicable Law. The sum, together with interest, shall be considered additional Rent and paid along with the monthly Rent.

**20. ABANDONMENT.** Prior written notice, with provision of timely Rent payment, is required if Resident intends to be absent for an extended period. If the Residence appears to be unoccupied for fifteen (15) days while Rent is due and unpaid, or for such other time as specified by Applicable Law and Resident has not given Landlord written notice of Resident's intention to remain, then Landlord is authorized to deem the Residence abandoned, to take immediate possession of the Residence, and to store, dispose of, or otherwise handle Resident's personal property subject to Applicable Law. Resident herein gives Landlord specific authority, at Resident's expense, and without limitation of Landlord's other remedies, to dispose of abandoned personal property in any manner Landlord chooses that does not violate Applicable Law, with no recourse whatsoever on the part of Resident.

**21. OTHER TERMINATION.** This Lease may be subject to immediate termination for certain acts as provided by Applicable Law, including any act that jeopardizes the health, safety, or welfare of Landlord,



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

any agent or employee of Landlord, or another Resident, or which involves imminent or actual severe personal injury or property damage.

22. **TENANT ESTOPPEL CERTIFICATES.** Upon Landlord's request, Resident shall execute and return a tenant estoppel certificate delivered to Resident within five (5) days after its receipt. Failure to comply with this requirement shall be deemed Resident's acknowledgment that the certificate is true and correct and may be relied upon by a lender or purchaser.

23. **ASSIGNMENT AND SUBLETTING.** Resident may not assign this Lease voluntarily or involuntarily nor sublet the whole or any portion of the Residence, which includes short-term rentals, without the prior written consent of Landlord. The failure to obtain such prior consent shall be deemed a material breach of this Lease. Subject to Applicable Law, any action or inaction or acceptance of any Rent or knowledge on the part of Landlord of the presence of a person other than Resident shall not be deemed to be a waiver of the requirement that Landlord's prior written consent must be obtained, nor shall it constitute a consent of any person as a "sub-tenant", approved occupant, or new tenant. Any proposed assignee, transferee or sublessee shall submit to Landlord an application and credit information for Landlord's approval and, if approved, sign a separate written agreement with Landlord and Resident to amend this Lease. Landlord's consent to any one assignment, transfer, or sublease shall not be construed as consent to any subsequent assignment, transfer, or sublease and shall not release Resident of Resident's obligations under this Lease. Landlord may assign this Lease at Landlord's sole and absolute discretion. Should Landlord sell, exchange, or assign this Lease or the Residence, as applicable (other than a conditional assignment as security for a loan), then Landlord, as transferor, will be relieved of all obligations on the part of Landlord accruing under this Lease from and after the date of such transfer.

24. **ACCESS.** Subject to Applicable Law, Resident shall allow Landlord and any agent or contractor of Landlord access to the Residence, at all reasonable times, for any lawful purpose, including but not limited to, to inspect the Residence, make necessary or requested repairs, perform routine maintenance, make alterations or improvements, or to show the Residence to prospective residents, purchasers, or mortgagees or to any other person having a legitimate interest therein. If practicable, Landlord shall give Resident reasonable notice prior to entering the Residence for routine situations requiring access. Landlord and Resident agree that 24-hour written notice will be reasonable and sufficient notice. No notice is required: (i) to enter in case of an emergency when immediate action is necessary in the opinion of Landlord or Landlord's agent for the protection of Resident or the Residence; (ii) if Resident is present and consents at the time of entry; or (iii) if Resident has abandoned or surrendered the Residence. Resident's failure or refusal to grant Landlord (or Landlord's representatives) access to the Residence as provided in this Section will be a default by Resident under this Lease. Written notice under this section may be provided by email, U.S. Mail, personal delivery, or by posting on, near, or under an entry door. Resident authorizes Landlord to place for sale or lease signs on the Residence without notice.

25. **LIABILITY.** To the full extent permitted by Applicable Law, (a) Landlord and Resident agree that Landlord will not be liable for any damages, injuries, or losses to any person or property related to or caused by any defective condition of the Residence, other residents or persons, theft, burglary, vandalism, or other crimes; (b) Landlord shall have no duty to furnish alarms of any kind, security guards, or additional locks, and latches and Resident shall not make any changes or additions to the existing locks for any reason without Landlord's prior written consent; and (c) Resident shall indemnify and hold Landlord and Landlord's agents, employees, lenders, and affiliates harmless from and against any and all claims, liabilities, damages, injuries, costs, or expenses that arise from or are


Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

related to Resident's or any Resident Party's use or occupancy of the Residence except to the extent solely caused by the intentional neglect or willful misconduct of Landlord, its agents, contractors, or employees.

Landlord's liability under this Lease will be limited to Landlord's unencumbered interest in the Residence. Neither Landlord nor any of its partners, members, officers, directors, agents, employees, shareholders, successors, assigns, or pledges, including without limitation, any management company or the individual signing this Lease on Landlord's behalf, will in any way be personally liable under this Lease.

**26. POSSESSION.** Except as provided by Applicable Law, if Landlord is unable to deliver possession of the Residence within seven (7) days of the Commencement Date stated above, then this Lease may be terminated at Landlord's option and all funds received from Resident will be returned. Except Resident agrees to release and hold Landlord and its agents and representatives harmless from any further obligation or consequential damages related to any delay or inability to deliver possession of the Residence.

**27. SEVERABILITY.** In the event any term or provision of this Lease shall be invalid or unenforceable under Applicable Law, the remaining provisions shall continue to be valid and shall remain binding. In like manner, any obligations of either Landlord or Landlord's agent or of Resident which may become required by Applicable Law during the term of this Lease shall be binding as if included herein. All rights granted to Landlord or Landlord's agent by Resident shall be cumulative and in addition to any existing law and any new law which might become effective. Any exercise, or failure to exercise, by Landlord or Landlord's agent of any right shall not act as a waiver of any other rights.

**28. JOINT AND SEVERAL LIABILITY.** Each Resident signing this Lease is individually and jointly and severally liable for the full and complete performance of all obligations of Resident under this Lease, jointly with every other Resident, and individually, whether or not such Resident continues in possession.

**29. RESIDENT'S WARRANTIES.** Resident represents and warrants that all statements and information in Resident's rental application are true and accurate as of the date hereof. If any information or representation provided by Resident in the rental application is false, incorrect, or misleading, then Resident shall be deemed to have committed a material default under this Lease that Resident shall not be provided an opportunity to cure, and Resident shall be subject to eviction, damages and other remedies to Landlord as provided in this Lease and Applicable Law. Resident represents and warrants that Resident (a) shall comply with all requirements, obligations and conditions of any senior interest holder such as Landlord's lenders; (b) shall not disturb, annoy, or endanger other neighbors or use the Residence for unlawful purposes; (c) shall comply with all Applicable Laws.

**30. NO SMOKING.** No smoking of any substance (including but not limited to tobacco, marijuana, or e-cigarettes) is allowed inside the home or on any portion of the Residence. If smoking does occur at the Residence, (a) Resident shall be in breach of this Lease; (b) Resident shall be responsible for all damage caused by the smoking, including stains, burns, odors, and removal of debris; (c) Resident, guests, and all others may be required to leave the Residence; and (d) Resident acknowledges that in order to remove odor caused by smoking, Landlord may need to replace carpet and drapes and paint the entire home regardless of when these items were last cleaned, replaced, or repainted and such


EQUAL HOUSING OPPORTUNITY
Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

replacement, repainting, and cleaning will be performed at Resident's sole cost and expense.

**31. FIRE SPRINKLERS.** If the Residence contains fire sprinklers, Resident shall notify Landlord in writing if the sprinklers are not working properly or are missing any parts. Resident shall not place hangers or any other items on the fire sprinklers.

**32. HOMEOWNER ASSOCIATIONS AND MUNICIPALITIES.** Resident understands and agrees that this Lease may be subject to the prior approval of a homeowner association ("**HOA**") and, if such approval is not obtained, subject to Applicable Law, this Lease shall be null and void. Resident agrees to comply with all applicable declarations, covenants, conditions and restrictions, rules, regulations, and other lawful directives ("**HOA Governing Documents**") of any HOA to which the Residence is subject. Resident will cooperate with Landlord in performing all acts necessary to comply with the HOA Governing Documents or other Applicable Laws. Resident hereby represents and warrants to Landlord that Resident (a) has received, reviewed and will comply with all applicable HOA Governing Documents and other instruments of record; (b) shall provide prompt written notice to Landlord if Resident receives any notice of violation of any HOA Governing Documents or other Applicable Law; (c) shall reimburse Landlord for any fines or charges imposed by any HOA or municipality as a result of Resident's violation or failure to comply with any applicable HOA Governing Documents or other Applicable Law. Any such fines or charges shall be considered additional rent and be paid with Resident's next monthly Rent payment. Resident agrees that in the event that Resident fails to comply with any provision of any applicable HOA Governing Documents or other Applicable Law within five (5) days following notice from Landlord of such failure to comply, Landlord shall have the right, but not the obligation, to access any non-secured areas of the Residence to effect compliance, and upon such action by Landlord, Resident shall pay to Landlord the cost of such compliance as additional Rent with Resident's next monthly Rent payment. In Landlord's sole discretion and upon demand by Landlord, Resident shall also pay to Landlord as additional rent an administrative fee in the amount of $35.00 for each notice, violation, charge, or fine assessed due to Resident's failure to comply with any HOA Governing Documents or Applicable Law ("**HOA Admin Fee**") to reimburse Landlord for administrative time and effort expended in complying with the particular violation on Resident's behalf. Resident further agrees to notify Landlord prior to reporting any violation to the HOA or to the municipality's code compliance department.

The Residence may be located within a community that includes common areas, resident amenities or facilities, and/or recreational facilities (collectively, "Amenities"). Resident's use of any Amenities is a privilege and license granted by Landlord, and not a contractual right except as otherwise provided for in this Lease. Such permission is expressly conditioned upon Resident's adherence to the terms of this Lease and any HOA Governing Documents. Resident expressly agrees to assume all risks of every type, including but not limited to risks of personal injury or property damage, of whatever nature or severity, related to Resident's and any Resident Parties' use of the Amenities. Resident shall hold Landlord harmless and release and waive any and all Claims that Resident may have against Landlord and that are in any way related to or arise from the use of any Amenities, including but not limited to, Resident's inability to use Amenities and any injury that may occur during use of the Amenities. Resident shall not be entitled to any reduction in Rent, in the event Resident is unable to use the Amenities for any reason. Resident shall indemnify and hold Landlord and Landlord's agents, employees, lenders, and affiliates harmless from and against any and all claims, liabilities, damages, injuries, costs, or expenses that arise from or are related to Resident's or any Resident Party's use of any Amenities.

**33. DAYS.** Except where stated otherwise in this Lease, all references to days in this Lease shall be construed as calendar days and a day shall begin at 12:00 a.m. and end at 11:59 p.m. local time where



EQUAL HOUSING OPPORTUNITY

Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

the Residence is located.

**34. SUBORDINATION/MORTGAGEE PROTECTION.** This Lease is and shall be subordinate to any mortgages or encumbrances that are now or may hereafter be placed upon the Residence and to any advances to be made thereunder and all renewals, replacements, and extensions thereof. Resident shall not cause or permit anything to be done that violates any mortgage on the Residence. Resident agrees to sign any document reasonably requested by Landlord's lender in connection with a mortgage on the Residence, including a Subordination, Non-Disturbance and Attornment Agreement in a form satisfactory to Landlord's lender.

**35. FORCE MAJEURE.** Any delay or failure in the performance by Landlord hereunder shall be excused if and to the extent caused by the occurrence of any event that is beyond Landlord's control, such as fires, floods, earthquakes, wars, sabotage, terrorism, vandalism, governmental acts, injunctions, or labor strikes, acts of God, and any other occurrences that are unavoidable or unpreventable despite reasonable efforts to prevent, avoid, delay, or mitigate the effects thereof.

**36. DAMAGE TO THE RESIDENCE.** If, through no fault of Resident, the Residence is completely or partially damaged or destroyed by fire, earthquake, flood, accident, or other casualty that renders the Residence totally or partially uninhabitable, as determined by Landlord, either Landlord or Resident may terminate this Lease by giving the other written notice or as otherwise provided by Applicable Law. Rent will be abated as of the date the Residence become totally or partially uninhabitable. The abated amount will be the current monthly Rent prorated on a 30-day period. If this Lease is not terminated, Landlord shall promptly repair the damage, and monthly Rent shall be reduced based on the extent to which the damage interferes with Resident's reasonable use of the Residence. If damages are caused by Resident or any Resident Party, Resident shall be responsible for all costs and expenses of repairing such damages, only Landlord shall have the right of termination, and no reduction in Rent shall be made.

**37. LEAD-BASED PAINT.** The Residence may have been constructed prior to 1978. Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of lead-based paint and/or lead-based paint hazards in the dwelling. Residents must also receive a federally approved pamphlet on lead poisoning prevention. In accordance with federal law, Landlord has provided, and Resident acknowledges receipt of, the disclosures on the attached lead-based paint disclosure form. The most current version of the "Protect Your Family From Lead In Your Home" pamphlet provided by EPA can be obtained at any time by accessing the resident portal and/or from the EPA's website at https://www.epa.gov/sites/default/files/2020-04/documents/lead-in-your-home-portrait-color-2020-508.pdf

**38. ASBESTOS.** Asbestos is a generic term used to describe a group of naturally occurring, fibrous minerals. These minerals occur as bundles of strong, flexible fibers that are chemically inert, do not burn, and have good insulating properties. Because of these properties, it was commonly used before 1981 for insulation, fireproofing, and a wide variety of other building materials commonly referred to as asbestos-containing materials ("**ACM**"). Landlord has no knowledge that the Residence contains asbestos or ACM. In the event the Residence contains asbestos, disturbance or damage to certain interior surfaces may increase the potential exposure to this substance. Resident, occupants, and their guests must not take or permit any action which in any way damages or disturbs the ceiling in the Residence or alters or disturbs the heating and ventilation system serving the Residence, including



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

without limitation, any ducting connected thereto. Resident must notify Landlord and its agents immediately in writing of any damage to or deterioration of the ceiling in the Residence or any portion thereof, including without limitation flaking, loose, cracking, hanging, or dislodged material, water leaks, or stains in the ceiling. There are both federal and state resources that can provide further information on asbestos and ACM. The U.S. EPA provides numerous details and references: http://www.epa.gov/asbestos.

**39. SATELLITE DISHES.** If Resident provides Landlord with prior written notice, Resident may install one dish on the Residence, provided it does not exceed one (1) meter (3.3 feet) in diameter. Resident's installation must comply with reasonable safety standards and may not interfere with any cable, telephone, or electrical systems within or serving the Residence. Installation must be done by a qualified person, or company and the satellite dish cannot be installed or affixed to the roof of the Residence. Resident will have the sole responsibility for maintaining any satellite dish or antenna and all related equipment. Resident must pay for any damages and for the cost of repairs or repainting which may be reasonably necessary to restore the Residence to its condition prior to the installation of any satellite dish or related equipment. Resident agrees to indemnify, defend, protect, and hold harmless Landlord and Landlord's agents for, from, and against any liability, costs (including reasonable attorney's fees), or claims for personal injuries or property damage caused by or related to Resident's installation of a satellite dish. If Resident installs a satellite dish or antenna prior to satisfying the conditions set forth above, then Resident shall be deemed in default under the Lease.

**40. MILITARY SERVICE TERMINATION RIGHT.** In the event that Resident is, or hereafter becomes, a member of the United States Armed Forces on extended active duty and receives permanent change of station orders to depart from the area where the Residence is located (which for purposes of this Section means an area in excess of thirty-five (35) miles from the Residence), or is ordered into military housing, then in any of these events, or as otherwise allowed by Applicable Law, Resident may terminate this Lease upon giving not less than thirty (30) days' written notice to Landlord. Resident must also provide to Landlord a copy of the official orders or a letter signed by Resident's commanding officer, reflecting the change, which entitles Resident to the right to terminate this Lease early under this Section.

**41. SEX OFFENDER REGISTRY.** If Resident has a concern about whether or not a registered sex offender is living in the neighborhood or nearby vicinity in which the Residence is located, Resident should take steps to review and confirm the same with the Georgia Sex Offender Registry, which is available at the Georgia Bureau of Investigation website at www.gbi.georgia.gov.

**42. NO ENCUMBRANCES PERMITTED.** Resident has no authority or power to cause or permit any lien or encumbrance of any kind whatsoever, whether created by act of Resident, operation of law, or otherwise, to attach to or be placed upon the Residence. Landlord will have the right to post and keep posted on the Residence any notice which it deems necessary for protection from such liens. Resident covenants and agrees not to suffer or permit any mechanic's lien, municipal lien, or other lien to be placed or recorded against the Residence, and, in case of any such lien attaching or notice of any lien, Resident covenants and agrees to cause it to be immediately released and removed of record. Notwithstanding anything to the contrary set forth in this Lease, if any such lien is not released and removed on or before the date notice of such lien is delivered by Landlord to Resident, Resident will be deemed in default hereunder and Landlord, at its sole option, may immediately take all action necessary to release and remove such lien, without any duty to investigate the validity thereof, and all sums, costs, and expenses, including reasonable attorneys' fees and costs, incurred by Landlord in connection with such lien will be deemed Rent under this Lease and will immediately be due and



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

Docusign Envelope ID: 7EF678FB-38E1-4F0A-8673-B7F93FAF109D

payable by Resident.

**43. THIRD PARTY DISCLOSURE.** Unless required by law, Landlord shall not be obligated to provide any party with information with respect to this Lease or the Residence other than the undersigned Resident or such Resident's permitted assignee or sublessee pursuant to this Lease. Landlord may, at its discretion, provide information regarding this Lease to law enforcement or any government agency.

**44. COMMUNICATIONS.**

**44.1. Consent to Receive Communications.** Resident consents to receive electronic and other forms of communication including, but not limited to, phone calls, emails and text messages, including such communications via an automated dialing system or other automated technology, from Landlord and Landlord's agents (including Property Manager) and third-party service providers in order to convey information regarding the Residence, such as rent reminders, maintenance request information and other information related to the provision of the services described in this Lease and its Addenda, and including any new or existing ancillary services Landlord may provide during the Lease term. Resident understands that standard text messaging rates will apply to any messages received and agrees not to hold Landlord or its agents liable for any electronic messaging charges or fees generated by this service.

Resident Initial: TBll Resident Initial: ______ Resident Initial: ______ Resident Initial: ______

Resident Initial: ______ Resident Initial: ______ Resident Initial: ______ Resident Initial: ______

**44.2. Consent to Transfer of Personal Information.** Resident acknowledges and agrees that the provision of the services described in this Lease and its Addenda, including any new or existing ancillary services Landlord may provide during the Lease term, may require Landlord to transmit certain personal information of Resident to its third-party service providers and Resident hereby consents to the transfer of such personal information for this limited purpose. Resident further acknowledges and agrees that any of Resident's personal information transferred to Landlord's third-party service providers will be subject to the privacy policies and procedures implemented by such third-party service providers, which such policies may differ from those that have been implemented by Landlord.

Resident Initial: TBll Resident Initial: ______ Resident Initial: ______ Resident Initial: ______

Resident Initial: ______ Resident Initial: ______ Resident Initial: ______ Resident Initial: ______

**45. AGREEMENT TO MEDIATE.** Other than claims and/or disputes relating to evictions, Resident agrees, before filing any action, to mediate in good faith with Landlord or Property Manager any dispute and/or claim arising out of and/or relating to this Lease and/or the Residence. Mediation fees, if any, shall be divided equally among the parties who appear at the mediation. Resident understands, acknowledges, and agrees that such mediation is a condition precedent to filing any action by Resident in court, arbitration, and/or any other dispute resolution forum. Thus, if Resident commences any action against Landlord and/or any of Landlord's agents (whether in court, arbitration, and/or any



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

other dispute resolution forum) without first attending and participating in good faith in the mediation referenced in this Section 45, then Resident's action shall be dismissed or stayed pending completion of this good faith mediation requirement, and Resident shall not be entitled to recover attorneys' fees and costs in such action, even if such fees and costs would otherwise be available to Resident in such action. For clarity, by failing to comply with the mediation requirement in this Section before filing any action, Resident waives its right to any attorneys' fees and costs (to the extent any right may exist) in the action even if Resident thereafter complies with this mediation requirement, and even for attorneys' fees and costs that may accrue following Resident's compliance with the mediation requirement set forth in this Section.

For clarity, and notwithstanding any other language in this Section 45, there is no obligation and/or requirement to mediate claims and/or disputes relating to evictions.

Resident Initial: TBH Resident Initial: ______ Resident Initial: ______ Resident Initial: ______

Resident Initial: ______ Resident Initial: ______ Resident Initial: ______ Resident Initial: ______

**46.** **CLASS, COLLECTIVE, AND MASS ACTION WAIVER.** Resident understands, acknowledges, and agrees that, by executing this Lease, Resident waives any right and/or ability to file, and/or participate as a representative and/or member of, any class, collective, mass, and/or similar action (collectively, for ease of reference, "Class Action") arising out of and/or in any way relating to this Lease and/or the Residence against Landlord and/or any of Landlord's agents (including Property Manager) in any forum. While Resident is not waiving any right(s) to pursue claims against Landlord and/or any of Landlord's agents in this Section of the Lease, Resident does hereby agree to file any such claim(s) in Resident's individual capacity, and Resident may not be a Class Action plaintiff, representative, and/or member, whether or not the class is putative, in any lawsuit against Landlord and/or any of Landlord's agents that arises out of and/or in any way relates to this Lease and/or the Residence. Accordingly, Resident expressly waives any right and/or ability to bring, represent, join, and/or otherwise maintain a Class Action against Landlord and/or any of Landlord's agents that arises out of and/or in any way relates to this Lease and/or the Residence.

**RESIDENT UNDERSTANDS, ACKNOWLEDGES, AND AGREES THAT, WITHOUT THE WAIVER CONTAINED IN THIS SECTION 46, RESIDENT MAY HAVE POSSESSED THE ABILITY TO BE A PARTY TO A CLASS ACTION AS DEFINED HEREIN. BY SIGNING THIS LEASE, RESIDENT UNDERSTANDS AND CHOOSES TO WAIVE SUCH RIGHT AND ABILITY AND CHOOSES TO HAVE ANY OF ITS CLAIMS DECIDED SOLELY ON AN INDIVIDUAL BASIS. THIS CLASS ACTION WAIVER SHALL SURVIVE THE TERMINATION AND/OR EXPIRATION OF THIS LEASE.**

Resident Initial: TBH Resident Initial: ______ Resident Initial: ______ Resident Initial: ______

Resident Initial: ______ Resident Initial: ______ Resident Initial: ______ Resident Initial: ______

**47.** **AGREEMENT TO SUBMIT MOLD CLAIMS TO ARBITRATION AND WAIVER OF ANY RIGHT TO A TRIAL BEFORE A JUDGE OR A JURY.** All disputes arising out of and/or in any way relating to this Lease based on and/or related to mold in the Residence (no matter how styled, whether as breach



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

of contract, tort, statutory, common law, or otherwise), and any supplemental and/or ancillary claims that are brought in conjunction with such mold-related claims, shall be submitted to binding, confidential arbitration before a single arbitrator, pursuant to the Federal Arbitration Act ("FAA") and conducted by the American Arbitration Association ("AAA") in accordance with the then-current and applicable rules of the AAA.

The arbitrator shall be selected by application of the rules of the AAA, or by mutual agreement of the parties, except that in all cases such arbitrator shall be an attorney admitted to practice in the state of the Residence. Nothing contained herein shall prevent a party from obtaining an injunction in the arbitration or in any court of competent jurisdiction. The final award of the arbitration shall be a reasoned award, and can be confirmed in any court with competent jurisdiction, but shall be treated as confidential and filed under seal.

The arbitration will be located, and the final hearing will take place, in the AAA office nearest the Residence, and within the same state. If there is no AAA office in the state of the Residence, then the arbitration will be located, and the final hearing will take place, in the AAA office nearest the Residence.

Each party is responsible for and will bear their own fees and costs in and related to the arbitration. For clarity, each party is responsible for any administrative filing fee related to their filings and/or submissions in the arbitration, and each party is responsible for their share of AAA administrative and arbitrator fees and costs. AAA administrative and arbitrator fees and costs shall be divided equally per side in the arbitration—*i.e.*, per each side of the "v" regardless of whether there is more than one party on any side of the "v".

The final hearing in the arbitration shall be completed within 180 days of the appointment of the arbitrator in the arbitration, and the final award shall be issued within 30 days of the completion of the final hearing. Discovery in the arbitration will be limited as follows, per each side (*i.e.*, per each side of the "v" regardless of whether there is more than one party on any side of the "v"):

- 15 interrogatories;
- 15 requests for production of documents;
- 40 collective hours of fact depositions, with no one deposition to exceed 12 hours of running deposition time;
- 3 affirmative expert reports, and rebuttal expert reports corresponding to the number of affirmative expert reports.

**FOR CLARITY, AS PROVIDED FOR DIRECTLY ABOVE IN SECTION 46, RESIDENT AGREES TO FILE ANY CLAIM(S) AGAINST LANDLORD, PROPERTY MANAGER AND/OR ANY OF THEIR RESPECTIVE AGENTS IN THE ARBITRATION IN RESIDENT'S INDIVIDUAL CAPACITY. RESIDENT UNDERSTANDS, ACKNOWLEDGES, AND AGREES THAT IT IS WAIVING ANY RIGHT AND/OR ABILITY TO PARTICIPATE IN ANY ARBITRATION AS A REPRESENTATIVE AND/OR MEMBER OF ANY CLASS ACTION (AS DEFINED IN SECTION 46) AGAINST LANDLORD, PROPERTY MAANGER, AND/OR ANY OF THEIR RESPECTIVE AGENTS.**

**RESIDENT ALSO UNDERSTANDS, ACKNOWLEDGES, AND AGREES THAT BY EXECUTING THIS LEASE AND AGREEING TO THIS SECTION 47, RESIDENT IS WAIVING ANY RIGHTS THAT IT MAY HAVE TO ELECT A TRIAL BY A JUDGE OR A JURY OF ANY ISSUE TRIABLE OF RIGHT BY A JUDGE OR A JURY, AND WAIVES ANY RIGHT TO TRIAL BY A JUDGE OR A JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE CLAIMS THAT ARE SUBJECT OF THIS SECTION 47. THIS WAIVER OF RIGHT TO TRIAL BY A JUDGE OR JURY IS GIVEN**



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

**KNOWINGLY AND VOLUNTARILY BY RESIDENT AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY A JUDGE OR A JURY WOULD OTHERWISE ACCRUE. THIS WAIVER SHALL SURVIVE THE TERMINATION AND/OR EXPIRATION OF THIS LEASE.**

Resident Initial: TBH _ Resident Initial: _____ Resident Initial: _____ Resident Initial: _____

Resident Initial: _____ Resident Initial: _____ Resident Initial: _____ Resident Initial: _____

**48. WAIVER.** No failure of Landlord to enforce any term of this Lease will be deemed a waiver of that term or of any other provision of this Lease, nor will any acceptance of a partial payment of Rent be deemed a waiver of Landlord's right to the full amount of Rent owed. Landlord's not enforcing or belatedly enforcing written notice requirements, rental due dates, liens, or other rights shall not be considered a waiver under any circumstances. Landlord's representatives (including personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose any obligations on Landlord unless in writing.

**49. CONSENT.** Except as otherwise stated in this Lease, in all instances where Landlord's permission, consent or approval is required hereby, or where Landlord is entitled to use its discretion or exercise its judgment, Landlord shall be entitled to grant or withhold such consent, or approval, and to exercise its discretion, in Landlord's sole, absolute, and unfettered discretion.

**50. TIME OF THE ESSENCE.** Resident acknowledges and agrees that time is of the essence in all provisions of this Lease and all addenda hereto.

**51. GUARANTY.** If Resident is approved for occupancy of the Residence on condition of securing a guarantor for Resident's obligations under this Lease, Resident shall cause such guarantor to execute a separate guaranty agreement under which guarantor will guarantee the obligations of Resident for the Lease Term. Resident acknowledges and agrees that, if a guarantor is required, this Lease shall not be effective until Landlord has received a signed lease guaranty and has approved the guarantor thereunder.

**52. ATTORNEYS' FEES.** In accordance with Applicable Law, in any legal action brought by either party to enforce the terms of this Lease, the prevailing party is entitled costs incurred in connection with such action, including reasonable attorneys' fees, expenses, and other costs of collection; provided, however, that such amount shall not exceed One Thousand Dollars ($1,000).

**53. INTERPRETATION.** For purposes of this Lease: (a) the words "include," "includes," and "including" are deemed to be followed by the words "without limitation"; (b) the words "herein," "hereof," "hereby," "hereto," and "hereunder" refer to this Agreement as a whole; (c) words denoting the singular have a comparable meaning when used in the plural, and vice-versa; (d) words denoting any gender include all genders; and (e) any pronouns used herein shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the person or persons referred to may require. The attachments and addenda referred to herein are an integral part of this Agreement to the same extent as if they were set forth verbatim herein.

**54. COMPLETE AGREEMENT.** This Lease and the attachments, addenda and any other documents incorporated herein by reference represent the sole and entire agreement between the parties, and



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to the subject matter. No amendment to or modification of this Lease or any attachment or addenda hereto shall be valid unless written and executed by Landlord and Resident. Landlord and Resident agree that the transaction contemplated by this Lease or any related transaction between the parties may be conducted by electronic/digital signatures in accordance with the Uniform Electronic Transactions Act. Notwithstanding the foregoing, Resident may at any time request a physical (non-electronic) copy of this Lease.

**55. PRIVACY.** Resident's personal information collected in connection with this Lease or Resident's tenancy at the Residence will only be used in accordance with Property Manager's privacy policy, as it is modified from time to time, and available at https://www.invitationhomes.com/privacy. Property Manager's privacy policy is incorporated into this Lease by reference. By executing this Lease, Resident acknowledges Property Manager's privacy policy describing its data privacy and protection practices and consents to the use of Resident's personal information as described therein. Resident further authorizes Landlord and Property Manager to release information related to Resident and any other occupants of the Residence as may be required by Applicable Law or reasonably requested by governmental authorities or agencies.

**56. AGENCY AND LICENSEE DISCLOSURE.** Resident agrees and understands that Invitation Homes Realty LLC dba Invitation Homes (GA Brokerage Firm Lic.#: H-65710) is a licensed real estate broker of Landlord and any licensed real estate brokers or sales persons of Invitation Homes are not acting as Resident's agent in this transaction and are acting exclusively for Landlord's own benefit. Resident agrees to hold Landlord and Invitation Homes free from all liability regarding the Residence and transaction arising from any claim of agency on behalf of Resident.

**Listing Broker**: Invitation Homes Realty LLC dba Invitation Homes
GA Brokerage Firm License Number: H-65710
MLS Office Code: RRSF01
Listing Broker Phone # 770-442-3372; Fax Number: 678-381-0371.
Listing Agent: Mary Keller Brown is the agent for Landlord exclusively.
Listing Agent's Georgia Real Estate License Number: 351480
Multiple Listing Number: ____________________

No broker in this transaction shall owe any duty to Landlord or Resident greater than what is set forth in their respective brokerage agreements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq.

**57. ATTACHMENTS AND ADDENDA TO THE LEASE.** Resident certifies that he/she has received a copy of this Lease and the following attachments and addenda, and understands that these attachments and addenda are incorporated into and form a part of this Lease:

1. [X] Rules and Regulations
2. [X] Utilities Addendum
3. [X] Lead-Based Paint and/or Lead-Based Hazards Disclosure
4. [X] Bed Bug Addendum
5. [X] Mold Addendum
6. [X] Insurance Addendum
7. [X] Landscape Maintenance Addendum
8. [X] Lease Buy-Out Addendum



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

9. [X] Air Filter Service Addendum
10. [X] Smart Home Addendum
11. [X] Animal Addendum
12. [x] Internet Package Addendum *(if applicable)*
13. [ ] Section 8 Tenancy *(if applicable)*
14. [ ]Community Amenities Addendum *(if applicable)*
15. [ ] Swimming Pool *(if applicable)*
16. [ ] Vehicle Registration Addendum *(if applicable)*
17. [ ] Rent Concession Addendum *(if applicable)*
18. [ ] Security Deposit Waiver Addendum *(if applicable)*

The undersigned Residents further acknowledge receipt of the "**Protect Your Family From Lead In Your Home**" booklet provided by the USEPA and available on the EPA's website at: https://www.epa.gov/sites/default/files/2020-04/documents/lead-in-your-home-portrait-color-2020-508.pdf

[Signatures on Following Page]



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

THIS IS A LEGALLY BINDING CONTRACT. RESIDENT ACKNOWLEDGES THAT RESIDENT HAS HAD AN ADEQUATE OPPORTUNITY TO READ AND STUDY THIS LEASE AND TO CONSULT WITH LEGAL COUNSEL IF RESIDENT HAS SO DESIRED.

**RESIDENT:**

Signature: DocuSigned by: Tamerlane Bey II
Name: Tamerlane Bey II

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

**Landlord agrees to rent the Residence on the above terms and conditions.**

**PROPERTY MANAGER**
**on behalf of Landlord:**

By: ____________________
Tim Lobner
Chief Operating Officer
THR Property Management L.P

Initial
____________________
Reviewed By





Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

## RULES AND REGULATIONS

1. **FURNITURE.** Resident will not bring any water-containing furniture into the Residence without Landlord's prior written consent and without first providing to Landlord written proof of insurance from a state-approved insurance company providing coverage for personal injury and/or property damage arising from the presence and/or use of such water-containing furniture.

2. **WALLS AND WOODWORK.** Resident shall be responsible for any damage caused by nails or adhesives of any kind and will restore the doors, woodwork, or walls of the Residence to the same condition as originally rented by Resident.

3. **LOCKS.** Resident will not change the locks on the doors of the Residence or install additional locks, chains, or other fasteners without the prior written consent of Landlord. Upon termination of the tenancy, all keys and garage door openers to the Residence must be returned to Landlord. If Resident fails to comply with this rule, Resident shall pay Landlord $75.00 for reimbursement of the cost of changing or re-keying the locks.

4. **FIRE RISK.** Resident will not use or store at the Residence any flammable liquids and fuels or other materials that are combustible or could increase the risk of fire. Resident shall not leave burning candles unattended, leave food cooking on the stove, or in the oven unattended.

5. **KEROSENE, SPACE OR PORTABLE HEATERS.** Resident will not store, install, or operate, in or about the Residence, any electric space or portable heaters or any heater fueled by kerosene, oil, or any other fluid. The use of any such heaters is strictly prohibited!

6. **FIREPLACES.** Wood may be burned in wood-burning fireplaces in the Residence only if approved in advance by Landlord in writing. No artificial substances, such as Duraflame® logs, are permitted. Ashes must be disposed of in metal containers, after ensuring the ashes are cold. Resident will comply with any "no burn days" declared by local government authorities.

7. **GRILLS AND BARBEQUES.** Grills, barbeques, and any other outdoor cooking or open flame devices shall only be used outside of the Residence on the ground level and shall be placed a minimum of ten (10) feet from any building or structure. Such devices shall not be used close to combustible materials, tall grass or weeds, on exterior walls or roofs, indoors, on balconies or patios, or in other locations vulnerable to fire. All coals or wood ash should be allowed to cool for 48 hours prior to disposal. Once coals or ash have cooled completely, they should be wrapped in aluminum foil and placed in a noncombustible trash bin. DO NOT PLACE HOT CHARCOAL IN A TRASH BIN!

8. **WINDOW SILLS.** Resident will not place anything on the outer edges of the sills of windows.

9. **STORAGE AND PLAY EQUIPMENT.** Resident will not install or erect any permanent or portable swimming or wading pools, playground equipment, trampolines, storage sheds, or other facilities anywhere at the Residence without Landlord's prior written consent.

10. **LOUD DISTURBANCES / QUIET ENJOYMENT OF RESIDENCE:** Resident will not disturb the peace and quiet enjoyment of any surrounding property by disruptive behavior on or near the Residence. Loud music or any other disturbance that can be heard two feet away from a closed door or ten feet away from an open window or door will not be tolerated at any time. The use of fireworks is strictly prohibited.

11. **GARBAGE AND RUBBISH.** Resident will place Resident's garbage and rubbish for disposal as directed by Landlord, any HOA, or municipality. Resident shall keep the entire Residence in a good state of preservation and cleanliness. Allowing trash and debris to accumulate is a material breach of this Lease. Resident is responsible for removal of trash and debris accumulating at the Residence; allowing



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

trash and debris to accumulate is a material breach of this Lease. Resident agrees to pay, as additional Rent, any reasonable fees and fines incurred due to Resident's failure to properly store containers or dispose of trash.

12. **CONDITION OF RESIDENCE.** Resident will keep balconies and patios free of all personal belongings and trash receptacles, except that Resident may maintain lawn furniture thereon, provided the same is maintained in a neat and orderly manner.

13. **DISPOSAL OF GREASE, ETC.** Resident will dispose of grease or other drain-blocking material or waste in a sealed container (e.g. glass jar) and throw it away as rubbish. Resident shall not dispose of grease or other drain-blocking material or waste in the plumbing, drains, or disposal systems at the Residence, and if Resident causes any such blockage, Resident shall reimburse Landlord for all resulting costs of repair or replacement.

14. **HEATING OF RESIDENCE.** Resident will keep the thermostat at the Residence to a minimum temperature of 55 degrees Fahrenheit during cold weather. Resident will not use the stove or other appliances for heating. Resident shall reimburse Landlord for all costs incurred by Landlord in repairing or replacing frozen pipes serving the Residence.

15. **MISCELLANEOUS.** Resident will keep any sidewalks, steps, and driveway clear of ice and snow. Landlord does not supply, repair, replace, or install storm doors, storm windows, screen doors, window screens or shades, fuses, light bulbs, batteries, furnace filters, laundry wash trays, janitor service, garbage collection, or any items or services not specifically listed as supplied in the Lease.

16. **SMOKE DETECTOR TESTING.** If Landlord has installed smoke detector(s) or carbon monoxide detector(s) in the Residence, it is Resident's responsibility to test them on a regular basis, keep them in good operating condition, and change batteries as necessary. Resident must immediately notify Landlord, in writing, of any problem, malfunction, or damage in either a smoke alarm or carbon monoxide detector. Resident shall also supply and maintain fire extinguisher(s).

17. **PARKING.** Resident shall ensure that all vehicles are parked where permitted, first in the driveway or garage and, then, if there are any additional vehicles, in the designated spaces of the Residence, followed by street parking. The driveway, garage, and/or parking spaces are to be used for parking properly licensed and operable motor vehicles, except as otherwise prohibited by Applicable Law or homeowner's association. Vehicles leaking oil, gas, or other motor vehicle fluids must not be parked on the Residence. Mechanical work or storage of inoperable vehicles is not permitted on or at the Residence. Resident is responsible for making sure that all Resident Parties park in the appropriate parking areas. If any vehicles are parked in non-parking areas, such as grass, sidewalks, or in front of mailboxes, or in the neighbors' yards, or if there are inoperable vehicles parked at the Premises, then the vehicle may be towed at Resident's expense.

If the Premises is located within a planned community of which Landlord controls the homeowners' association, Landlord may tow or otherwise relocate any unauthorized or illegally parked vehicle in accordance with Applicable Law or homeowner's association rules, regulations and CCRs at Resident's expense. If applicable, Landlord may tow or relocate any vehicle as necessary to complete repairs in the community. A vehicle is unauthorized or illegally parked if it (i) has a flat tire or other condition rendering it inoperable; (ii) is on jacks, blocks or has a wheel missing; (iii) has no license plate or no registration and/or inspection sticker; (iv) takes up more than one parking space; (v) belongs to a resident or occupant who has surrendered or abandoned the Residence; (vi) is parked in a marked handicap space without the legally required handicap insignia in plain view; (vii) blocks another vehicle from exiting; (viii) is parked in a fire lane or designated "no parking" area; (ix) is parked in a space marked for other resident(s) or unit(s); (x) is parked on the grass or sidewalk; (xi) blocks garbage trucks from access to a dumpster; or (xii) belongs to a resident and is parked in a visitor parking space.


Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

18. **ATTIC AND CRAWL SPACE.** Except solely for the purpose of replacing air filters or performing other Resident responsibilities outlined in the Lease, Resident will not access the attic or crawl space nor use the attic or crawl space for storage for any reason without Landlord's prior written consent.



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

## UTILITIES ADDENDUM

This Utilities Addendum ("**Addendum**") dated 4/21/2026 is part of that certain lease dated 4/21/2026 (the "**Lease**"), by and between 2018-4 IH Borrower LP ("Landlord"), with THR Property Management L.P. acting as the designated agent of Landlord ("Property Manager") and the undersigned residents as ("**Resident**"). Capitalized terms not defined in this Addendum shall have the same meaning as in the Lease.

1. **UTILITY BILLING AGENT.** Landlord has contracted directly with a utility billing agent ("**Utility Billing Agent**") to provide utility administrative services, including, but not limited to, utility connections/disconnections and billing services. The Utility Billing Agent shall bill Resident the Utility Fees as defined hereunder, which Utility Fees are subject to change upon thirty (30) days' written notice from Landlord or Utility Billing Agent to Resident.

2. **GAS AND ELECTRIC CHARGES.** Resident must place all gas and electric utilities and services in Resident's name as of the Commencement Date. Resident will be required to show written proof that the utilities for electricity and gas services have been transferred and are in the name of Resident as of the Commencement Date. Resident must pay all costs for the conversion from existing gas and electric utilities' service providers. In the event that Resident fails to place service in Resident's name with the gas and electric providers as of the date of the Commencement Date (or allows the accounts to be placed in the name of the Landlord during the Lease Term), in addition to Landlord's ability to serve the notice and terminate the Lease as provided by law, the Utility Billing Agent may bill Resident for the estimate of Resident's gas and electric charges during that period plus an administrative fee of $25.00 per utility provider invoice **("Utility Service Fee").** Notwithstanding anything to the contrary in this Section, should Applicable Law prohibit Resident from placing gas and/or electric utilities and services in Resident's name, the administrative fee shall not be charged.

3. **WATER, SEWER, STORMWATER, AND TRASH CHARGES.** Landlord shall contract directly with the water, sewer, stormwater, and trash utility service providers providing utilities or services to the Residence. The Utility Billing Agent shall invoice Resident and Resident shall pay monthly for the water, sewer, stormwater, and trash, and all other charges on the relevant provider bills ("**Monthly Utility Charges**") plus the Utility Admin Fee as outlined on the Summary. Resident shall also pay a move-in fee or move-out fee, at Landlord's sole discretion, of $25.75. The fees being referred to in this and the preceding paragraph shall be considered the "Utility Fees" and shall be paid within fifteen (15) days of Resident's receipt of the invoice from the Utility Billing Agent.

Resident Initial: DS TBll _ Resident Initial: ______ Resident Initial: ______ Resident Initial: ______

Resident Initial: ______ Resident Initial: ______ Resident Initial: ______ Resident Initial: ______

4. **GREEN ENERGY.** Resident agrees to cooperate with Landlord's efforts to improve energy efficiency at the Residence, including research and development related thereto. At Landlord's request, Resident shall use its best efforts to provide information related to Resident's energy consumption at the Residence.

5. The Monthly Utility Charges and Utility Fees will be deemed additional "Rent" under this Lease so that Resident's failure to pay the Monthly Utility Charges and Utility Fees when due or failure to place and continuously maintain utilities and services in Resident's name, if applicable, will constitute an Event of Default.

6. In the event of any conflict between the terms of this Addendum and the Lease, the terms of this Addendum shall control.



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

**RESIDENT:** DocuSigned by: Tamerlane Bey II
CDFAAC298F0947E...
Tamerlane Bey II

Signature:
Name: ______________________

Signature:
Name: ______________________

Signature:
Name: ______________________

Signature:
Name: ______________________

Signature:
Name: ______________________

Signature:
Name: ______________________

Signature:
Name: ______________________

**PROPERTY MANAGER**
**On Behalf of Landlord:**

By: ______________________

Tim Lobner
Chief Operating Officer
THR Property Management L.P




Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

## PRE-1978 HOUSING RENTAL AND LEASES DISCLOSURE OF INFORMATION LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS

**Lead Warning Statement**

Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.

**Lessor's Disclosure**

(a) Presence of lead-based paint and/or lead-based paint hazards (check one below):

[ ] Known lead-based paint and/or lead-based paint hazards are present in the housing (explain):

______________________________

______________________________

[x] Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and Reports available to the Lessor (check one below):

[ ] Lessor has provided the lessee with all available records and reports pertaining to lead-based paint and/or lead-based hazards in the housing (list documents below):

______________________________

______________________________

[x] Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Resident's Acknowledgment**

(c) The undersigned Residents acknowledge they have received copies of all information listed above.

(d) The undersigned Residents acknowledge they have received the pamphlet *Protect Your Family From Lead in Your Home*.

**Agent's Acknowledgment** (*initial*)

(e) TL Manager has informed the lessor of the lessor's obligations under 42 U.S.C. 4852d and is aware of its responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify to the best of their knowledge, that the information they have provided is true and accurate.





Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

**RESIDENT** DocuSigned by: Tamerlane Bey II
CDFAAC708F5947E...
Tamerlane Bey II

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

**PROPERTY MANAGER**
**On Behalf of Landlord:**

By: ____________________

Tim Lobner
Chief Operating Officer
THR Property Management L.P




Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

# BED BUG ADDENDUM

This Bed Bug Addendum ("**Addendum**") dated 4/21/2026 is part of that certain lease dated 4/21/2026 (the "**Lease**"), by and between 2018-4 IH Borrower LP ("Landlord"), with THR Property Management L.P. acting as the designated agent of Landlord ("Property Manager") and the undersigned residents as ("**Resident**"). Capitalized terms not defined in this Addendum shall have the same meaning as in the Lease. This Addendum sets forth the agreement of Resident and Landlord for prevention of bed bugs at the Residence. As used herein, the terms "you" or "your" refer to all individuals listed as Resident under the Lease.

1. **PURPOSE.** This Addendum modifies the Lease and addresses situations related to bed bugs (*cimex lectularius*) which may be discovered infesting the dwelling or personal property in the dwelling. You understand that we relied on your representations to us in this Addendum.

2. **INSPECTION.** You agree that you will inspect the dwelling within 48 hours after move-in/renewal and notify Landlord of any bed bugs or bed bug infestation. Landlord has no knowledge of any bed bug infestation or presence in the Residence.

3. **INFESTATIONS.** You agree that you have read the information in this Addendum about bed bugs and you agree that if you previously lived anywhere that had a bed bug infestation that all your personal property (including furniture, clothing, and other belongings) has been treated by a licensed pest control professional. You agree that such items are free of further infestation. If you disclose a previous experience of bed bug infestation, we can require documentation of the treatment and inspect your personal property and possessions to confirm the absence of bed bugs. You agree to provide documentation of any previous bed bug infestation which you may have experienced.

4. **ACCESS FOR INSPECTION AND PEST TREATMENT.** You must allow us and our pest control agents access to the dwelling at reasonable times to inspect for or treat bed bugs as allowed by law. You and your family members, occupants, guests, and invitees must cooperate and will not interfere with inspections or treatments. We have the right to select any licensed pest control professional to treat the dwelling and building. We can select the method of treating the dwelling, building, and common areas for bed bugs. You are responsible for and must, at your own expense, have your own personal property, furniture, clothing, and possessions treated according to accepted treatment methods established by a licensed pest control firm that we approve. You must do so as close as possible to the time we treated the dwelling. If you fail to do so, you will be in default of the Lease and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease. You agree not to treat the dwelling for a bed bug infestation on your own.

5. **NOTIFICATION.** You must promptly notify us:

- Of any known or suspected bed bug infestation or presence in the dwelling, or in any of your clothing, furniture, or personal property.
- If you discover any condition or evidence that might indicate the presence or infestation of bed bugs, or any confirmation of bed bug presence by a licensed pest control professional or other authoritative source.

6. **COOPERATION.** If we confirm the presence or infestation of bed bugs, you must cooperate and coordinate with us and our pest control agents to treat and eliminate the bed bugs. You must follow all directions from us or our agents to clean and treat the dwelling and building that are infested. You must remove or destroy personal property that cannot be treated or cleaned as close as possible to the time



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

we treated the dwelling. Any items you remove from the dwelling must be disposed of off-site and not in the property's trash receptacles. If we confirm the presence or infestation of bed bugs in your dwelling, we have the right to require you to temporarily vacate the dwelling and remove all furniture, clothing, and personal belongings in order for us to perform pest control services. If you fail to cooperate with us, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease.

7. **RESPONSIBILITIES.** You may be required to pay all reasonable costs of cleaning and pest control treatments incurred by us to treat your dwelling for bed bugs. If we confirm the presence or infestation of bed bugs after you vacate your dwelling, you may be responsible for the cost of cleaning and pest control treatments. If you fail to pay us for any costs you are liable for, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease.

8. **TRANSFERS.** If we allow you to transfer to another property because of the presence of bed bugs, you must have your personal property and possessions treated according to accepted treatment methods or procedures established by a licensed pest control professional. You must provide proof of such cleaning and treatment to our satisfaction.

## Information about Bed Bugs

**Bed bug Appearance.**
Bed bugs have six legs. Adult bed bugs have flat bodies about 1/4 of an inch in length. Their color can vary from red and brown to copper colored. Young bed bugs are very small. Their bodies are about 1/16 of an inch in length. They have almost no color. When a bed bug feeds, its body swells, may lengthen, and becomes bright red, sometimes making it appear to be a different insect. Bed bugs do not fly. They can either crawl or be carried from place to place on objects, people, or animals. Bed bugs can be hard to find and identify because they are tiny and try to stay hidden.

**Life Cycle and Reproduction.**
An average bed bug lives for about 10 months. Female bed bugs lay one to five eggs per day. Bed bugs grow to full adulthood in about 21 days. Bed bugs can survive for months without feeding.

**Bed bug Bites.**
Because bed bugs usually feed at night, most people are bitten in their sleep and do not realize they were bitten. A person's reaction to insect bites is an immune response and so varies from person to person. Sometimes the red welts caused by the bites will not be noticed until many days after a person was bitten, if at all.

**Common signs and symptoms of a possible bed bug infestation.**

- Small red to reddish brown fecal spots on mattresses, box springs, bed frames, mattresses, linens, upholstery, or walls.
- Molted bed bug skins, white, sticky eggs, or empty eggshells.
- Very heavily infested areas may have a characteristically sweet odor.
- Red, itchy bite marks, especially on the legs, arms, and other body parts exposed while sleeping. However, some people do not show bed bug lesions on their bodies even though bed bugs may have fed on them.

For more information, see the Internet websites of the United States Environmental Protection Agency and the National Pest Management Association.



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

**Bed Bugs Don't Discriminate.**
Bed bugs' increased presence across the United States in recent decades can be attributed largely to a surge in international travel and trade. It's no surprise then that bed bugs have been found time and time again to have taken up residence in some of the fanciest hotels and apartment buildings in some of the nation's most expensive neighborhoods.

Nonetheless, false claims that associate bed bugs' presence with poor hygiene and uncleanliness have caused rental housing residents, out of shame, to avoid notifying owners of their presence. This serves only to enable the spread of bed bugs.

**Bed Bugs Don't Transmit Disease.**
There exists no scientific evidence that bed bugs carry disease. In fact, federal agencies tasked with addressing pests of public health concern, namely the U.S. Environmental Protection Agency and the Centers for Disease Control and Prevention, have refused to elevate bed bugs to the threat level posed by disease-carrying pests. Claims associating bed bugs with disease are false.

**Preventing Bed Bug Encounters When Traveling.**
Because humans serve as bed bugs' main mode of transportation, it is extremely important to be mindful of bed bugs when away from home. Experts agree that the spread of bed bugs across all regions of the United States is largely attributed to an increase in international travel and trade. Travelers are therefore encouraged to take a few minutes upon arriving to their temporary destination to thoroughly inspect their accommodations, to ensure that any uninvited guests are detected before the decision is made to unpack.

Because bed bugs can easily travel from one room to another, it is also recommended that travelers thoroughly inspect their luggage and belongings for bed bugs before departing for home.

**Bed Bug Do's and Don'ts.**

- **Do not bring used furniture from unknown sources into your dwelling.** Countless bed bug infestations have stemmed directly from the introduction into a resident's unit of second-hand and abandoned furniture.
- **Do address bed bug sightings immediately.** Residents who suspect the presence of bed bugs in their property must immediately notify the Landlord.
- **Do not attempt to treat bed bug infestations.** Under no circumstances should you attempt to eradicate bed bugs. Health hazards associated with the misapplication of traditional and non-traditional, chemical-based insecticides and pesticides poses too great a risk to you and your neighbors.
- **Do comply with eradication protocol.** If the determination is made that your property is indeed playing host to bed bugs, you must comply with the bed bug eradication protocol set forth by both the Landlord and their designated pest management company.

9. **Controlling Provisions.** In the event of any conflict between the terms of this Addendum and the Lease, the terms of this Addendum shall control.

[Signatures on Following Page]



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

**RESIDENT:**

**On Behalf of Landlord:**

Signature: DocuSigned by: Tamerlane Bey II COFAAC709F0947E...

Name: Tamerlane Bey II

Signature:

Name: ____________________

Signature:

Name: ____________________

Signature:

Name: ____________________

Signature:

Name: ____________________

Signature:

Name: ____________________

Signature:

Name: ____________________

**PROPERTY MANAGER**

By: ____________________

Tim Lobner

Chief Operating Officer

THR Property Management L.P





Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

EQUAL HOUSING OPPORTUNITY

# MOLD PREVENTION AND INFORMATION ADDENDUM

This Mold Information and Prevention Addendum ("**Addendum**") dated 4/21/2026 is part of that certain lease dated 4/21/2026 (the "**Lease**"), by and between 2018-4 IH Borrower LP ("Landlord"), with THR Property Management L.P acting as the designated agent of Landlord ("Property Manager") and the undersigned residents as ("**Resident**"). Capitalized terms not defined in this Addendum shall have the same meaning as in the Lease. This Addendum sets forth the agreement of Resident and Landlord for the management of mold growth at the Residence.

1. **NATURE OF MOLD GROWTH.** Mold is a type of fungi which occurs naturally in the environment and is necessary for the natural decomposition of plant and other organic material. It spreads by means of sharing in microscopic spores borne on the wind and is found everywhere life can be supported. Most people are familiar with mold growth in the form of bread mold and mold that may grow on bathroom tile. Residential home construction is not, and cannot be, designed to exclude mold spores. If the growing conditions are right, mold can grow in the Residence. In order to grow, mold requires a food source. This might be supplied by items found in the home, such as fabric, carpet, or even wallpaper, or by building materials, such as drywall, wood, and insulation, to name a few. Also, mold growth requires a temperate climate. The best growth occurs at temperatures between 40ºF and 100ºF. Most importantly, mold growth requires moisture.

2. **MOISTURE AND MOLD GROWTH.** Moisture availability is the only mold growth factor that can be controlled in a residential setting. By minimizing moisture, Resident can reduce or eliminate mold growth. Moisture in the home can have many causes. Spills, leaks, overflows, condensation, and high humidity are common sources of home moisture. Good housekeeping and home maintenance practices are essential in the effort to prevent or eliminate mold growth. If moisture is allowed to remain on the growth medium, mold can develop within 24 to 48 hours. And if moisture sources are not removed or addressed, mold will continue to grow. A 2004 Federal Centers for Disease Control and Prevention study found that there is currently no scientific evidence that the accumulation of mold causes any significant health risks for persons with normally functioning immune systems. Nonetheless, appropriate precautions need to be taken, as mold may be linked with adverse health effects in susceptible persons. While there are no specific mold cleanup levels or established numerical abatement standards for mold remediation, the most effective remedy for mold is to remove the source of excess water or continuing moisture intrusion.

3. **STEPS TO REDUCE MOLD GROWTH.** Mold growth depends largely on how Resident maintains the Residence. Resident shall act to prevent conditions which cause mold or moisture build-up, and minimize any effects that may be caused by mold growth, including the following:
   a. Before bringing items into the Residence, check for signs of mold on the items. For example, potted plants (roots and soil), furnishings, or stored clothing and bedding material, as well as many other household goods, could already contain mold growth.
   b. Regular vacuuming and cleaning will help reduce mold levels. Mild bleach solutions and most tile cleaners are effective in eliminating or preventing mold growth if used in accordance with the manufacturer's recommendations.
   c. Keep the humidity in the Residence low. Vent clothes dryers to the outdoors. Ventilate kitchens and bathrooms by opening the windows, by using exhaust fans, or by running the air conditioning to remove excess moisture in the air and to facilitate evaporation of water from wet surfaces.
   d. Promptly clean up spills, condensation, and other sources of moisture. Thoroughly dry any wet surfaces or material. Do not let water pool or stand in your home.



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

e. Inspect for leaks on a regular basis. Look for discolorations or wet spots. Empty water from condensation pans (refrigerators and air conditioners). Take notice of musty odors and any visible signs of mold. Promptly notify Landlord of any visible or apparent leaks.
f. Should mold develop, thoroughly clean the affected area. First, test to see if the affected material or surface is color safe. Porous materials, such as fabric, upholstery, or carpet should be discarded. Should the mold growth be substantial, contact Landlord for further direction on the use of services from a qualified mold abatement professional.

4. **ADDITIONAL INFORMATION AND RESOURCES.** The U.S. EPA provides information and resources regarding excess water, moisture intrusion, and mold: http://www.epa.gov/mold/. The U.S. Centers for Disease Control and Prevention also provide details about mold growth and human health: http://www.cdc.gov/mold/.

5. **DUTIES OF RESIDENT.** Resident agrees to assume responsibility for following the recommendations set forth in this Addendum. It is the responsibility of Resident to reduce or eliminate the occurrence of mold growth in the home including but not limited to periodically running the heating, ventilation, and air conditioning (HVAC) system, changing air filters, and ensuring there is proper ventilation in the Residence. Resident's failure to take preventative actions may reduce or preclude Landlord's responsibility for water damage or water intrusion. If there is any water damage or water intrusion to the Residence, Resident shall take prompt action to prevent conditions which cause mold growth to develop. Resident shall immediately notify Landlord of water intrusion and allow Landlord the opportunity to inspect the problem. Failure to notify Landlord of water intrusion or water damage and/or the failure of Resident to allow Landlord access to the Residence for the purpose of inspection, evaluation, and/or failure to take the steps listed above to mitigate or eliminate the occurrence of mold growth, and/or failure to take corrective action shall be an affirmative defense to any claims by Resident arising from water damage or water intrusion.

6. **LIMITATIONS ON LANDLORD LIABILITY.** Resident acknowledges and agrees that Landlord shall not be liable for any claims with respect to the presence and/or existence of molds, mildew, and/or microscopic spores unless caused by the sole gross negligence or willful misconduct of Landlord. To the extent Landlord may be liable, if at all, Resident, on behalf of itself and any Resident Parties, hereby indemnifies Landlord and Landlord's officers, directors, partners, members, affiliates, successors, and assigns from and against any and all Claims for property damage, injury, or death resulting from the exposure to microscopic spores, mold, fungi, and/or mildew and from any loss of resale value due to the presence and/or existence of mold, mildew, and/or microscopic spores; provided, however, that in no event is Resident indemnifying Landlord as a result of the presence and/or existence of mold, mildew, and/or microscopic spores if caused by the sole gross negligence or willful misconduct of Landlord.

7. **CONTROLLING PROVISIONS.** In the event of any conflict between the terms of this Addendum and the Lease, the terms of this Addendum shall control.

[Signatures on Following Page]



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

**RESIDENT:**
**On Behalf of Landlord:**
Signature: DocuSigned by: Tamerlane Bey II CDFAAC708F0947E
Name: Tamerlane Bey II

Signature:
Name: ______________________

Signature:
Name: ______________________

Signature:
Name: ______________________

Signature:
Name: ______________________

Signature:
Name: ______________________

Signature:
Name: ______________________

**PROPERTY MANAGER**

By: ______________________

Tim Lobner
Chief Operating Officer
THR Property Management L.P



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

# INSURANCE ADDENDUM
## (Insurance Required by Resident)

This Insurance Addendum ("**Addendum**") dated 4/21/2026 is part of that certain lease dated 4/21/2026 (the "**Lease**"), by and between 2018-4 IH Borrower LP ("Landlord"), with THR Property Management L.P acting as the designated agent of Landlord ("Property Manager") and the undersigned residents as ("**Resident**"). Capitalized terms not defined in this Addendum shall have the same meaning as in the Lease.

1. **NO LANDLORD LIABILITY.** Landlord shall not be liable for personal injury or for damage to or loss of Resident's personal property (furniture, jewelry, clothing, etc.) from fire, flood, water leaks, rain, hail, ice, snow, smoke, explosions, interruption of utilities, theft, acts of God, or any other event whatsoever except the gross negligence or willful misconduct of Landlord. Resident understands that Landlord's insurance for these risks does not cover Resident, any of Resident's personal property, or any family members, guests, or invitees or their personal property, and that Resident and its family members, guests, and invitees are not considered a co-insured of the Landlord.

2. **PERSONAL LIABILITY INSURANCE.** Resident agrees to maintain, at Resident's sole cost and expense, during the Lease Term and any subsequent renewal periods, a policy of personal liability insurance, which provides coverage to third parties in the amount not less than $100,000 per occurrence. Landlord shall be named as an interested party on such policy. Resident understands that such liability insurance does not protect against loss or damage to personal property or belongings.

3. **DOG BITE LIABILITY INSURANCE.** If Landlord has authorized Resident to keep a dog or dogs at the Residence under this Addendum, Resident shall obtain and maintain a personal liability policy that includes a minimum of $100,000 in dog bite liability coverage for all dogs at the Residence. If Resident's personal liability policy excludes coverage for any dog at the Residence, then Resident must obtain and maintain a separate, stand-alone dog bite liability insurance policy with at least $100,000 in liability coverage for the excluded dogs in a policy form reasonably satisfactory to Landlord. Resident's liability is not limited to the amount covered by such insurance policy. Prior to receiving possession of the Residence, Resident must provide proof of insurance and Landlord may demand proof of Resident's dog bite insurance policy at any time during the Lease Term. If Resident fails to provide proof of insurance prior to move-in, or fails to maintain insurance as required herein, Landlord may, but shall not be required to, obtain insurance on behalf of Resident (as Resident's agent), to the extent permitted by the laws of the jurisdiction in which the Residence is located, the cost of which (premium plus administrative charges) will be added to Resident's monthly Rent. Failure to provide adequate proof of insurance to Landlord, in Landlord's sole judgment, shall constitute a breach of the Lease.

4. **LOSSES AND DAMAGES TO PROPERTY.** Resident is solely responsible for any damage or loss to the personal property (furniture, jewelry, clothing, etc.) of Resident and its family members, guests, and invitees and their personal property from fire, flood, water leaks, rain, hail, ice, snow, smoke, explosions, interruption of utilities, theft, acts of God, or any other event whatsoever except the gross negligence or willful misconduct of Landlord, and for obtaining insurance against these risks.

5. **INSURANCE PROGRAM.** Resident acknowledges that Landlord has made available


Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

to Resident a program (the "**Program**") providing an opportunity to purchase policies of renter's insurance or personal liability insurance directly from Get Covered. You may access this Program at ***https://invitationhomes.policyverify.io/***. However, Resident is under no obligation to purchase renter's insurance or personal liability insurance through this Program.

6. **GROUP INSURANCE.** To satisfy the personal liability insurance requirements of the Lease and this Addendum, Resident may, but is not obligated to, participate in a group insurance program that may be made available by Landlord from time to time ("**Group Insurance**"), the terms and conditions of which shall be provided to Resident separately. Resident shall pay, as additional rent, the amount of $8.00 per month for such Group Insurance for all periods that Resident is enrolled in Group Insurance. Resident's participation in Group Insurance and timely payment of the monthly Group Insurance charges shall constitute satisfactory evidence of insurance. **This section shall not apply to Resident if Resident is a participant in a housing subsidy program, such as the Housing Choice Voucher program administered by US Department of Housing and Development.**

7. **PROOF OF INSURANCE; NOTICE OF LAPSE IN COVERAGE; NOTICE OF CANCELLATION OF COVERAGE; FAILURE TO INSURE.** Prior to receiving possession of the Residence, Resident must provide proof that Resident has obtained $100,000 personal liability coverage as described in Section 2. Resident shall also provide proof that it is maintaining this insurance from time to time thereafter upon Landlord's reasonable request. If Resident fails to provide proof of insurance prior to move-in, or fails to maintain insurance as required herein, Landlord may, but shall not be required to, obtain insurance on behalf of Resident (as Resident's agent), to the extent permitted by the laws of the jurisdiction in which the Residence is located, the cost of which plus a reasonable administrative charge in the amount of $7.50 per month, will be due and payable along with Resident's monthly Rent. Notwithstanding the above, Resident's failure to provide proof of the required insurance will constitute an Event of Default under the Lease.

Proof of insurance, whether obtained through Get Covered or another insurance carrier, agent or broker, must be uploaded to:

https://invitationhomes.policyverify.io/upload-coverage-proof

Interested Party notifications (any notice of lapse in coverage or notice of cancellation of coverage) must be uploaded to:

https://getcovered.my.site.com/forms/s/resident-support?origin=invitationhomes.policyverify.io

or forwarded by U.S. Mail to:

Get Covered
PO Box 660121
Dallas, TX 75266

8. **CONTROLLING PROVISIONS.** In the event of any conflict between the terms of this Addendum and the Lease, the terms of this Addendum shall control.

[Signatures on Following Page]



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

**RESIDENT:**
**On Behalf of Landlord:**
Signature: DocuSigned by: Tamerlane Bey II C0FAAC70BF0947E
Name: Tamerlane Bey II

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

**PROPERTY MANAGER**

By: ____________________

Tim Lobner
Chief Operating Officer
THR Property Management L.P



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

# LANDSCAPING ADDENDUM

This Landscaping Addendum ("**Addendum**") dated 4/21/2026 is part of that certain lease dated 4/21/2026 (the "**Lease**"), by and between 2018-4 IH Borrower LP ("Landlord"), with THR Property Management L.P acting as the designated agent of Landlord ("Property Manager") and the undersigned residents as ("**Resident**"). Capitalized terms not defined in this Addendum shall have the same meaning as in the Lease.

Resident hereby agrees and acknowledges that Resident will maintain the yard area and related landscape located at the Residence during the Lease Term (collectively, "Landscape Maintenance"). The Landscape Maintenance shall be performed by Resident in strict conformance with and pursuant to the following standards:

1. **COMPLIANCE.** Resident must comply with all state laws, county, township, and municipal ordinances, as well as all homeowner's association rules and regulations with respect to Landscape Maintenance which shall control if in conflict with this Addendum.

2. **LAWN WATERING.** Resident must sufficiently water all lawn and grass areas as needed to keep the lawn green. To minimize evaporation and promote deeper saturation, the recommended watering time is early in the morning. Watering times and duration may need to be adjusted to accommodate different types of sprinklers and climates. Note: Any watering schedules may also need to be adjusted to comply with local watering restrictions.

3. **LAWN MAINTENANCE.** Resident is responsible for all mowing and edging. The lawn should be mowed weekly during the spring and summer and as needed in the fall and winter. Resident should edge around the driveway, sidewalks, and planter areas at the same time the lawn is mowed. All debris and grass clippings must be blown off or swept clean from the driveway and surrounding yard and placed in the trash or a green recycling/compost bin.

4. **PLANT WATERING AND MAINTENANCE.** Resident must sufficiently water all planted areas as needed to keep plants green and growing and remove weeds. Resident is responsible for regularly mulching of and maintaining pine straw for (as the case may be) flowerbeds and, if necessary, trees. To minimize evaporation and promote deeper saturation, the best watering time is early morning. Watering times and duration may need to be adjusted to accommodate different types of sprinklers, climates, and seasonal changes.

5. **HARDSCAPING MAINTENANCE.** Resident is responsible for maintaining all hardscaped areas, if any, including patios, walkways, and rock landscaping in place of traditional grass lawns. Residents are responsible for keeping all hardscaped areas clean, level and well-maintained. This includes regularly removing debris and weeds, and periodically recompacting the hardscape material, if necessary, to preserve the appearance and functionality of the space. Hardscape materials should remain evenly distributed and free of displacement. Any damaged or missing underlining hardscape fabric should be promptly repaired or replaced.

6. **IRRIGATION SYSTEMS.** Resident's Residence may be equipped with an automatic sprinkler system and timer that can be set to water at the appropriate time and frequency. Please be aware of warning signs that your sprinkler system might need adjustment. Inspect the lawn and plants bi-weekly for mildew or excessive yellow coloration. These can be signs that the system timer is incorrect or malfunctioning.

7. **BASIC MAINTENANCE.** Resident should check the irrigation system regularly to ensure that it is working properly. Resident is responsible for any costs related to maintenance, including those related to winterization, replacement of any damaged or broken sprinkler heads, mini sprayers, or drip lines and/or accessories associated with the irrigation system at the Residence



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

with parts of "like kind". In colder climates, Resident shall be responsible for regular snow and ice removal.

8. **TREES, SHRUBS, AND HEDGES.** Resident must trim or prune all trees, branches, shrubs, and hedges that are under ten feet high as needed and necessary to prevent excessive or unkempt growth. For the portions of any trees, branches, shrubs and hedges that are higher than ten feet, Resident agrees to notify Landlord of excessive or unkempt growth, including if any trees and/or branches are leaning against the Residence or a fence. In the event the Residence is at the corner of intersecting streets, Resident must keep all hedges or shrubs trimmed to a height that does not obstruct or obscure traffic visibility across the Residence. Any fallen tree branches or debris shall be removed by Resident in a timely manner.

9. **PERIODIC INSPECTIONS.** Landlord shall have the right to conduct exterior inspections of the Landscape Maintenance. Residents whose Landscape Maintenance is not consistent with the guidelines set forth in this Addendum will be in default of the Lease if maintenance is not remediated as set forth in the Lease.

10. **PROFESSIONAL LANDSCAPING SERVICES.** Notwithstanding anything to the contrary in the Lease or this Addendum, Landlord, in its sole discretion, may provide or require professional landscaping services at the Residence, including but not limited to, maintenance of the garden, landscaping, trees, shrubs, and grass, weed control, and proper disposal of all clippings and waste (the "Landscaping Services").

11. **PAYMENT.** If Landlord assumes Resident's obligations with respect to Landscaping Services, Resident shall pay, at the time and place and in the same manner as Resident pays Rent and all other amounts due under the Lease, an additional monthly fee, as additional rent, in the amount set forth in the Summary (the "**Landscaping Fee**"). Resident's failure to timely pay the Landscaping Fee shall be considered a default under the Lease and shall entitle Landlord to all remedies available to Landlord thereunder.

12. **CONTROLLING PROVISIONS.** In the event of any conflict between the terms of this Addendum and the Lease, the terms of this Addendum shall control.

[Signatures on Following Page]



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

**RESIDENT:**
**On Behalf of Landlord:**
Signature: DocuSigned by: Tamerlane Bey II CDFAAC709F0947E...
Name: Tamerlane Bey II

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

**PROPERTY MANAGER**

By: ____________________

Tim Lobner
Chief Operating Officer
THR Property Management L.P


Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

# LEASE BUY-OUT ADDENDUM

This Lease Buy-Out Addendum ("**Addendum**") dated 4/21/2026 is part of that certain lease dated 4/21/2026 (the "**Lease**"), by and between 2018-4 IH Borrower LP ("Landlord"), with THR Property Management acting as the designated agent of Landlord ("Property Manager") and the undersigned residents as ("**Resident**"). Capitalized terms not defined in this Addendum shall have the same meaning as in the Lease.

This Addendum sets forth the agreement of Resident and Landlord in the event that Resident decides to move out of the Residence at any time prior to the end of the Lease term as stated in the Lease.

1. **BUY-OUT OPTION.** After at least sixty (60) days of full compliance with the terms of this Lease, as long as Resident is not in default of the Lease either at the time Resident desires to terminate the Lease or when the Lease will be terminated, Resident shall have the option of terminating the Lease by complying with all of the following procedures:

   a. At least thirty (30) days prior to the date Resident desires to terminate the Lease, Resident shall provide written notice to Landlord ("Notice"), stating Resident's desire to exercise Resident's buy-out option and the date of proposed termination (the "Termination Date"); and

   b. With the Notice, Resident shall deliver to Landlord a payment, by electronic payment or cashier's check in the amount of: (i) Rent due under the Lease through the Termination Date; (ii) a cancellation fee equal to two months' Rent; and (iii) repayment of move-in or special concessions received by Resident at the commencement of the Lease or during the term of the Lease, if any (such amount shall be collectively referred to herein as the "Buy-Out Payment"); and

   c. Resident shall also execute, no later than ten (10) days from the date of providing the Notice, a Termination of Lease Agreement (the "Termination Agreement") on Landlord's form and submit the Termination Agreement to Landlord; and

   d. Resident shall vacate the Residence on or before the Termination Date.

If Resident vacates the Residence prior to the expiration of the Lease without exercising Resident's buy-out option, Landlord shall have the right to declare Resident in default and be entitled to collect from Resident all appropriate damages as authorized by the Lease and Applicable Law.

2. **NATURE OF BUY-OUT PAYMENT.** Resident acknowledges that: (i) the Buy-Out Payment is a buy-out fee which contemplates the various risks of the parties with respect to the early termination of the Lease, and in the event the Premises is re-rented, the Resident is not entitled to any return of part or all of the Buy-Out Payment; and (ii) this buy-out option may be exercised by Resident, in Resident's sole discretion. Notwithstanding the foregoing, in the event that Resident is in default of the Lease after Resident has executed the Termination Agreement, Landlord shall have the right, but not the obligation, to declare the Termination Agreement null and void and retain the Buy-Out Payment, subject to the terms of the Lease and applicable law.

3. **USE OF SECURITY DEPOSIT.** Resident and Landlord agree that the Security Deposit paid by Resident under the Lease may be used to pay for any portion of the Buy-out Payment, if such Buy-Out Payment remains unpaid on the Termination Date, in Landlord's sole discretion and in





Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

accordance with Applicable Law, but only after the Security Deposit is applied in accordance with the Lease.

4. **RATIFICATION OF LEASE TERMS.** Except as modified by this Addendum, all terms and provisions of the Lease are hereby ratified by the parties and remain in full force and effect.

[Signatures on Following Page]


Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

**RESIDENT:**
**On Behalf of Landlord:**
Signature: Tamerlane Bey II
Name: Tamerlane Bey II

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

**PROPERTY MANAGER**

By: ____________________

Tim Lobner
Chief Operating Officer
THR Property Management L.P



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

## AIR FILTER SERVICE ADDENDUM

This Air Filter Service Addendum ("**Addendum**") dated 4/21/2026 is part of that certain lease dated 4/21/2026 (the "**Lease**"), by and between 2018-4 IH Borrower LP ("Landlord"), with THR Property Management L.P. acting as the designated agent of Landlord ("Property Manager") and the undersigned residents as ("**Resident**"). Capitalized terms not defined in this Addendum shall have the same meaning as in the Lease.

1. **DESCRIPTION OF AIR FILTER SERVICE.** Landlord will cause a vendor selected by Landlord to provide replacement air filters for the Residence on a quarterly basis **(collectively the "Air Filter Service").**

2. **AGREEMENT FOR AIR FILTER SERVICE.** From and after the Effective Date and for the Term hereof, Resident agrees that Resident is responsible for replacing the air filter(s) located at the Residence promptly upon receipt of the air filters through the Air Filter Service. Resident must notify Landlord of any issues regarding the Air Filter Service, including but not limited to, delay in delivery of air filters, incorrect sizes of air filters, and delivery of damaged air filters.

3. **LACK OF COMPLIANCE FEE.** In the event Resident fails to replace the air filter(s) at the Residence promptly upon receipt of the air filters provided through the Air Filter Service, Landlord shall charge Resident $25.00 lack of compliance fee **("Lack of Compliance Fee").** All such charges shall be payable as additional rent

4. **TERM.** The term of this Addendum shall last from the Effective Date until the expiration of the Lease Term as it is described in the Lease **("Term").**

5. **PRICING AND PAYMENT.** Resident shall pay to Landlord, as additional rent, the air filter service fee in the amount set forth in the Summary paid on a monthly basis **("Air Filter Service Fee").** The terms of the Lease applicable to the monthly Rent, including, but not limited to, due dates and payment methods, shall apply to this Air Filter Service Fee.

6. **CANCELLATION.** Landlord reserves the right to cancel the Air Filter Service in its sole and absolute discretion. Resident will be responsible for the Air Filter Service Fee until the expiration of the Term or through the date of cancellation of the Air Filter Service, whichever is earlier.

7. **CONSENT TO RECEIVE ELECTRONIC COMMUNICATION.** Resident consents to receiving electronic and other forms of communication from Landlord regarding the Air Filter Service, the Air Filter Service Fee, or anything else related to Landlord's provision of the Air Filter Service.

8. **CONSENT TO TRANSFER OF PERSONAL INFORMATION.** Resident acknowledges and agrees that the provision of the Air Filter Service may require Landlord to transmit certain personal information of Resident to its third party service providers and hereby consents to the transfer of such personal information. Resident further acknowledges and agrees that any personal information transferred to Landlord's third party service providers will be subject to the privacy policies and procedures implemented by such third party service providers, which such policies and procedures may differ from those that have been implemented by Landlord.

9. **CONSENT TO RECEIVE COMMUNICATIONS.** Resident hereby consents to receive phone calls, emails, and text messages via an automated dialing system or other automated technology from the Landlord and the Landlord's third party service provider related to the provision of the Air Filter Service. Resident may unsubscribe from such communications by sending an email to



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

Docusign Envelope ID: 7EF678FB-38E1-4F0A-8673-B7F93FAF109D

Hello@secondnature.com with the subject line "STOP" or by calling 1-888-423-1555. Resident may reply "STOP" to unsubscribe from text communication. Standard message and data rates may apply.

10. **NO LANDLORD LIABILITY.** Landlord shall not be liable to Resident for any claim whatsoever, including, but not limited to claims resulting from the failure or malfunction of the Air Filter Service.

11. **WARRANTY DISCLAIMER.** LANDLORD MAKES NO WARRANTY OF ANY KIND, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING WITHOUT LIMITATION, MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE. THE AIR FILTER SERVICE IS PROVIDED BY LANDLORD "AS IS" AND "AS AVAILABLE." RESIDENT ASSUMES ALL RISK FOR RESIDENT'S USE OF THE AIR FILTER SERVICE, INCLUDING WITHOUT LIMITATION, LOSS OR DAMAGE TO ANY PERSONAL PROPERTY AS A RESULT OF USING THE AIR FILTER SERVICE OR PERSONAL INJURY OR ANY OTHER HARM. IN NO EVENT DOES LANDLORD GUARANTEE THAT RESIDENT'S USE OF THE AIR FILTER SERVICE WILL BE UNINTERRUPTED OR ERROR FREE, OR THAT THE AIR FILTER'S SERVICE'S OPERATION WILL NOT NEGATIVELY AFFECT RESIDENT'S USE AND QUIET ENJOYMENT OF THE RESIDENCE. THIS SECTION 11 APPLIES TO THE MAXIMUM EXTENT ALLOWED BY APPLICABLE LAW.

12. **LIMITATION OF LIABILITY.** IN NO EVENT WILL LANDLORD AND/OR ITS OFFICERS, DIRECTORS, EMPLOYEES, AGENTS OR REPRESENTATIVES BE LIABLE (i) FOR ANY INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY OR PUNITIVE DAMAGES RELATED TO OR ARISING FROM RESIDENT'S USE, MISUSE, OR INABILITY TO USE THE AIR FILTER SERVICE, INCLUDING BUT NOT LIMITED TO, DAMAGES TO PERSONAL OR REAL PROPERTY OF ANY NATURE WHATSOEVER, PERSONAL OR BODILY INJURY, FOR ANY CLAIM RESULTING FROM RESIDENT'S NON-COMPLIANCE WITH OR BREACH OF THE TERMS HEREOF OR ANY OTHER STATE OR FEDERAL LAWS. IN NO EVENT SHALL LANDLORD'S AGGREGATE LIABILITY UNDER THIS ADDENDUM EXCEED THE TOTAL SUM OF MONIES PAID BY RESIDENT TO LANDLORD AS CONSIDERATION FOR USE OF THE AIR FILTER SERVICE DURING THE TWELVE (12) MONTHS IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO SUCH LIABILITY. THIS SECTION 12 APPLIES TO THE MAXIMUM EXTENT ALLOWED BY APPLICABLE LAW.

13. **INDEMNIFICATION.** RESIDENT AGREES, AT RESIDENT'S EXPENSE, TO INDEMNIFY, DEFEND AND HOLD HARMLESS LANDLORD, ITS LICENSORS, AND THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS FROM AND AGAINST ALL DEMANDS, LIABILITIES, LOSSES, CLAIMS AND EXPENSES, INCLUDING ATTORNEY'S FEES, ARISING OUT OF (i) RESIDENT'S USE OF THE AIR FILTER SERVICE, (ii) THIRD PARTY CLAIMS, ACTIONS OR ALLEGATIONS OF INFRINGEMENT BASED ON INFORMATION, DATA OR CONTENT RESIDENT SUBMITTED IN CONNECTION WITH THE AIR FILTER SERVICE, (iii) ANY FRAUD OR MANIPULATION, OR OTHER BREACH OF THIS ADDENDUM, BY RESIDENT. LANDLORD RESERVES THE RIGHT, AT ITS OWN EXPENSE AND IN ITS SOLE DISCRETION, TO ASSUME THE EXCLUSIVE DEFENSE AND CONTROL OF ANY MATTER OTHERWISE SUBJECT TO INDEMNIFICATION BY RESIDENT.

14. **CONTROLLING PROVISIONS.** In the event of any conflict between the terms of this Addendum and the Lease, the terms of this Addendum shall control with respect to the subject matter hereof.

[Signatures on Following Page]



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

**RESIDENT:**
**On Behalf of Landlord:**
Signature: Tamerlane Bey II
Name: Tamerlane Bey II

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

**PROPERTY MANAGER**

By: ____________________

Tim Lobner
Chief Operating Officer
THR Property Management L.P



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.
EQUAL HOUSING OPPORTUNITY

## SMART HOME ADDENDUM

This Smart Home Addendum ("**Addendum**") dated 4/21/2026 **("Effective Date")** is part of that certain lease dated 4/21/2026 (the "**Lease**"), by and between 2018-4 IH Borrower LP ("Landlord"), with THR Property Management L.P. acting as the designated agent of Landlord ("Property Manager") and the undersigned residents as ("**Resident**"). Capitalized terms not defined in this Addendum shall have the same meaning as in the Lease.

1. **DESCRIPTION OF SERVICE.** The Smart Home System ("System") gives Resident video doorbell, remote and keyless access capability, remote HVAC control and remote monitoring capabilities, as applicable, via the online dashboard and mobile application (collectively, "the Service").

2. **SERVICE.** From and after the Effective Date and until the expiration of the Lease Term as it is described in the Lease ("Term"), Landlord will make available the Service via the Hardware (defined below) and System.

3. **ACKNOWLEDGEMENT OF HARDWARE.** Resident acknowledges that Landlord has installed or, during the Term, may install various hardware and other System components necessary to the operation, maintenance and functioning of System, including, but not limited to an electronic lock system, video doorbell, digital thermostat, network connectivity hub, leak sensor and other wiring and fixtures (collectively, "the Hardware"). Resident agrees to provide Landlord and its third party service providers with access to the Residence at such times as may be reasonably requested by Landlord or such third party service providers for purposes of installing, maintaining or replacing the Hardware. Resident agrees to maintain and keep in good care and condition all Hardware. Resident may not: (a) remove any Hardware; (b) disconnect any Hardware from any power source; or (c) interfere with the operation of any Hardware or any other System functionality. Resident acknowledges that all Hardware is and shall remain, during and after the term of the Lease, the sole property of Landlord, and Resident shall have no ownership thereof or right thereto except in connection with Resident's use of the Residence during the term of the Lease. Resident shall be solely responsible for the full cost of the Hardware should Resident damage, uninstall or interfere with the System, including all installation, service, and maintenance fees. Resident agrees to promptly notify Landlord in the event any Hardware or the System is not functioning in accordance with the advertised specifications. Resident shall reimburse Landlord, immediately upon demand, for any amounts expended by Landlord in connection with Resident's breach of this Section 3. Resident's failure to so reimburse Landlord within five (5) days of such demand shall constitute a default by Resident under the Lease, and Landlord shall thereafter be entitled to any and all remedies available to Landlord in connection with a Resident Default under the Lease.

4. **OTHER HARDWARE.** Resident acknowledges and agrees that any additional smart home hardware or technology that Resident may obtain directly from a manufacturer, reseller or other third party ("Other Hardware") shall not comprise part of the System and shall not be subject to the terms or conditions of this Addendum, regardless of whether or not such Other Hardware is integrated into, or accessible through, the Service. Other Hardware will be provided pursuant to the terms and conditions of the applicable manufacturer, reseller or other third party, and Landlord shall have no responsibility to Resident for the availability or performance of such Other Hardware.

5. **PRICING AND PAYMENT.** Resident shall pay to Landlord, as additional rent, the amount set forth in the Summary paid on a monthly basis. The terms of the Lease applicable to the monthly Rent, including, but not limited to, due dates and payment methods, shall apply to this Smart Home Fee. Resident acknowledges and agrees that the provision of the Service may require Resident to obtain



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

and maintain broadband internet access, wireless networking capabilities or other network connectivity and that the obtainment or maintenance of such connectivity may require the payment of additional fees to third party service providers, which such fees shall be the sole responsibility of Resident.

6. **CONSENT TO RECEIVE ELECTRONIC COMMUNICATION.** Resident consents to receiving electronic and other forms of communication from Landlord regarding the Service, the Smart Home Fee, or anything else related to Landlord's provision of the Service.

7. **CONSENT TO TRANSFER OF PERSONAL INFORMATION.** Resident acknowledges and agrees that the provision of the Service may require Landlord to transmit certain personal information of Resident to its third party service providers and hereby consents to the transfer of such personal information. Resident further acknowledges and agrees that any personal information transferred to Landlord's third party service providers will be subject to the privacy policies and procedures implemented by such third party service providers, which such policies and procedures may differ from those that have been implemented by Landlord.

8. **NO LANDLORD LIABILITY.** Landlord shall not be liable to Resident for any claim whatsoever, including, but not limited to claims resulting from the failure or malfunction of the Hardware or the System, any inability to access the Residence or to use any other feature provided by the Service, or any invasion of privacy, intrusion upon seclusion or trespass claim related to the placement of the Hardware in the Residence or the monitoring, capture, storage and/or accidental dissemination of personal information or other data that may be stored by the System.

9. **WARRANTY DISCLAIMER.** LANDLORD MAKES NO WARRANTY OF ANY KIND, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING WITHOUT LIMITATION, MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE. THE SERVICE IS PROVIDED BY LANDLORD "AS IS" AND "AS AVAILABLE." RESIDENT ASSUMES ALL RISK FOR RESIDENT'S USE OF THE SERVICE, INCLUDING WITHOUT LIMITATION, INABILITY TO ACCESS THE RESIDENCE, LOSS OR DAMAGE TO ANY PERSONAL PROPERTY AS A RESULT OF USING THE SERVICE OR PERSONAL INJURY OR ANY OTHER HARM. IN NO EVENT DOES LANDLORD GUARANTEE THAT THE SERVICE OR ANY PORTION THEREOF, ARE ACCURATE, ERROR OR BUG FREE, THAT RESIDENT'S USE OF THE SERVICE WILL BE UNINTERRUPTED OR ERROR FREE, OR THAT THE SERVICE'S OPERATION WILL NOT NEGATIVELY AFFECT RESIDENT'S USE AND QUIET ENJOYMENT OF THE RESIDENCE. THIS SECTION 9 APPLIES TO THE MAXIMUM EXTENT ALLOWED BY APPLICABLE LAW.

10. **LIMITATION OF LIABILITY.** IN NO EVENT WILL LANDLORD AND/OR ITS OFFICERS, DIRECTORS, EMPLOYEES, AGENTS OR REPRESENTATIVES BE LIABLE (i) FOR ANY INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY OR PUNITIVE DAMAGES RELATED TO OR ARISING FROM RESIDENT'S USE, MISUSE, OR INABILITY TO USE THE SERVICE, INCLUDING BUT NOT LIMITED TO, DAMAGES TO PERSONAL OR REAL PROPERTY OF ANY NATURE WHATSOEVER, PERSONAL OR BODILY INJURY, INCREASED ENERGY OR TELECOMMUNICATIONS EXPENSES, ANY DAMAGES RESULTING FROM UNAUTHORIZED ACCESS TO LANDLORD'S SERVERS, SERVER UNAVAILABILITY, AND ANY PERSONAL INFORMATION STORED THEREIN, HOWEVER CAUSED UNDER ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED, TO CONTRACT OR TORT AND WHETHER OR NOT EITHER PARTY WAS OR SHOULD HAVE BEEN AWARE OR ADVISED OF THE POSSIBILITY OF SUCH DAMAGE; (ii) FOR ANY CLAIM ATTRIBUTABLE TO ERRORS, OMISSIONS, OR OTHER INACCURACIES IN THE SERVICE OR DESTRUCTIVE PROPERTIES OF THE SERVICE, AND (iii) FOR ANY CLAIM RESULTING FROM RESIDENT'S NON-COMPLIANCE WITH OR BREACH OF THE TERMS HEREOF OR ANY APPLICABLE TERMS OF SERVICE FOUND ONLINE OR ANY OTHER STATE



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

OR FEDERAL LAWS. IN NO EVENT SHALL LANDLORD'S AGGREGATE LIABILITY UNDER THIS ADDENDUM EXCEED THE TOTAL SUM OF MONIES PAID BY RESIDENT TO LANDLORD AS CONSIDERATION FOR USE OF THE SERVICE DURING THE TWELVE (12) MONTHS IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO SUCH LIABILITY. THIS SECTION 10 APPLIES TO THE MAXIMUM EXTENT ALLOWED BY APPLICABLE LAW.

11. **INDEMNIFICATION.** RESIDENT AGREES, AT RESIDENT'S EXPENSE, TO INDEMNIFY, DEFEND AND HOLD HARMLESS LANDLORD, ITS LICENSORS, AND THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS FROM AND AGAINST ALL DEMANDS, LIABILITIES, LOSSES, CLAIMS AND EXPENSES, INCLUDING ATTORNEY'S FEES, ARISING OUT OF (i) RESIDENT'S USE OF THE SERVICE, (ii) THIRD PARTY CLAIMS, ACTIONS OR ALLEGATIONS OF INFRINGEMENT BASED ON INFORMATION, DATA OR CONTENT RESIDENT SUBMITTED IN CONNECTION WITH THE SERVICE, (iii) ANY FRAUD OR MANIPULATION, OR OTHER BREACH OF THIS ADDENDUM, BY RESIDENT, (iv) THIRD PARTY CLAIMS, ACTIONS OR ALLEGATIONS BROUGHT AGAINST LANDLORD ARISING OUT OF RESIDENT'S USE OF THE SERVICE OR THE WEBSITE, OR (v) FOR ANY CLAIM WHATSOEVER RESULTING FROM RESIDENT'S OR RESIDENT'S AFFILIATES', EMPLOYEES', CONTRACTORS' OR AGENTS' BREACH OF THE CHILDREN'S ONLINE PRIVACY PROTECTION ACT OR ANY OTHER STATE OR FEDERAL PRIVACY OR INFORMATION SECURITY LAWS. LANDLORD RESERVES THE RIGHT, AT ITS OWN EXPENSE AND IN ITS SOLE DISCRETION, TO ASSUME THE EXCLUSIVE DEFENSE AND CONTROL OF ANY MATTER OTHERWISE SUBJECT TO INDEMNIFICATION BY RESIDENT.

12. **CONTROLLING PROVISIONS.** In the event of any conflict between the terms of this Addendum and the Lease, the terms of this Addendum shall control with respect to the subject matter hereof.

[Signature Page Follows]



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

**RESIDENT:**
**On Behalf of Landlord:**

Signature: DocuSigned by: Tamerlane Bey II
Name: Tamerlane Bey II

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

**PROPERTY MANAGER**

By: ____________________

Tim Lobner
Chief Operating Officer
THR Property Management L.P



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

## ANIMAL ADDENDUM

This Animal Addendum ("**Addendum**") dated 4/21/2026 is part of that certain lease dated 4/21/2026 (the "**Lease**"), by and between 2018-4 IH Borrower LP ("Landlord"), with THR Property Management L.P acting as the designated agent of Landlord ("Property Manager") and the undersigned residents (collectively, "**Resident**"). Capitalized terms not defined in this Addendum shall have the same meaning as in the Lease. In the event the terms of this Addendum conflict with those of the Lease, the terms of the Addendum shall control to the extent of the conflict.

1. **ATTESTATION**: Resident attests to the following (mark one):

   a. Resident ☐ OWNS at least one dog and/or cat that is not considered a service, assist, or comfort animal ("Pet") and will keep a Pet at the Residence.

   b. Resident ☒ DOES NOT OWN a Pet that will be kept at the Residence.

2. **CONDITIONAL AUTHORIZATION.** Landlord hereby authorizes Resident to keep at the Residence the Pet(s) identified by Resident in this Addendum until the Lease expires or is terminated, whichever occurs first, subject to the terms and conditions of the Lease, including this Addendum. Landlord may revoke this authorization sooner if, in Landlord's judgment, Resident, Resident's Pet, Resident's guest or any Residence occupant violates the terms of this Addendum. Resident shall promptly remove from the Residence any offspring of any animal unless Landlord provides written authorization that such animal's offspring may remain at the Residence, and applicable additional Pet-related charges are paid with respect to such offspring. Resident must remove any animal, including Pets, previously permitted pursuant to this Addendum within 24 hours of written notification from Landlord that the animal, in Landlord's sole and absolute judgment, creates a nuisance or disturbance or is undesirable or dangerous. Resident's failure to remove an animal, after authorization is revoked shall be deemed a breach of the Lease and this Addendum, allowing Landlord to terminate Resident's tenancy.

3. **NUMBER OF PETS.** Resident may keep up to three (3) approved Pets at the Residence. The burden is on Resident to notify Landlord of any Pets and, upon receipt of Landlord's approval pursuant to this Addendum, to pay the applicable Pet Fees and Pet Rent. Landlord's approval is conditioned on Resident's continued compliance with the terms of the Lease and this Addendum.

4. **BREED RESTRICTIONS.** Unless specifically authorized in this Addendum, following dog breeds are not permitted at the Residence: American Pit Bull Terriers, Rottweilers, Staffordshire Terriers, or any dog that includes a percentage or mix of any of these breeds. Any canines other than domestic dogs are not permitted including, but not limited to, wolves, coyotes, dingoes, and jackals, along with any canine or wolf hybrids. For example, and not by limitation, a Husky-Wolf or Timber-Wolf mix is not permitted. Resident acknowledges that Landlord may, in its sole discretion, require Resident, at Resident's expense, to provide DNA test results or other proof, to Landlord's reasonable satisfaction, showing that a Pet kept at the Residence is not prohibited. Landlord reserves the right to modify or restrict certain animal breeds in its sole discretion at any time. Except as expressly set forth in this Addendum, Resident shall not keep or harbor at the Residence any animals of any kind including, but not limited to, dogs, cats, other mammals, birds, reptiles, and marine animals.

5. **NON-RESIDENT ANIMALS.** Pets and other animals of guests, visitors or any other non-resident are not authorized at the Residence, except as permitted by Applicable Law.

6. **PET FEE.** Consistent with Applicable Law, and in consideration for Landlord's permission to keep a Pet at the Residence, Resident must pay the one-time fee in the amount set forth in the Summary per Pet (the "Pet Fee") prior to move-in as part of the Initial Payment or prior to any Landlord approved Pet(s) entering the Residence during the Lease Term. Except as otherwise required by Applicable Law, the Pet Fee is NON-REFUNDABLE, it is not part of the Security Deposit or Rent, and it is not a deposit to repair damages caused by Pets.



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

7. **PET RENT.** Resident shall be responsible for payment of additional monthly rent in the amount set forth in the Summary per Pet plus any applicable rental tax (the "Pet Rent") for the Pets Landlord authorizes to be kept at the Residence. Except as otherwise required by Applicable Law, the Pet Rent is in addition to the Rent due to Landlord pursuant to the Lease, is subject to all non-payment provisions of the Lease, and is not a deposit to repair damages caused by Pets. Pet Rent amounts are subject to change and, if Resident is found to be out of compliance with the terms of this Addendum or adds an additional Pet, Resident will be charged the then-current rate for any newly added Pets.

8. **ADDITIONAL PETS.** If Resident becomes an owner of one or more Pets during the Lease Term, Resident must notify Landlord and obtain Landlord's approval of the new Pet(s) prior to the Pet(s) entering the Residence and pay any Pet Fee or Pet Rent as required by Landlord. Failure to do so will result in Resident being assessed the non-compliance fees described below and could result in termination of the Lease.

9. Pet Fee(s) and Pet Rent(s) shall be deemed additional rent under the Lease.

10. **ANIMAL RULES.** Resident is responsible for the animal's actions and agrees to the following rules:

    a. Pets and service, assist, and companion animals must be housebroken. All other animals must be caged. Resident will immediately remove and clean up all animal waste at the Residence, including all interior and exterior areas of the home, as well as any common areas.

    b. Resident will safely secure or arrange for animal care when maintenance vendors or employees of Landlord need to enter the Residence.

    c. Resident will keep animals on a leash when not indoors or in a fenced backyard area.

    d. Resident will comply with all applicable statutes, ordinances, restrictions, homeowners' association rules, and other enforceable regulations regarding any animal.

    e. Resident agrees to treat all Pets, approved service, assist, and companion animals for fleas as preventative maintenance.

    f. Resident shall not allow animals to disturb neighbors or other residents.

    g. Resident shall provide adequate food, water, and veterinary care for all animals. Resident shall not leave food or water outside the Residence that would attract pests or other nuisances. Resident shall not leave any animal unattended at the Residence for an unreasonable period of time.

    h. Resident shall have all animals licensed and vaccinated, including but not limited to rabies vaccinations, as required by Applicable Law. Upon Landlord's request, Resident shall provide documentation evidencing compliance with Applicable Law.

    i. Fish tanks are limited to 20 gallons and predator fish, such as piranhas, are strictly prohibited.

11. **ADDITIONAL RULES.** Landlord may, from time to time and in its sole discretion, make reasonable updates to this Addendum and will notify Residents of any such updates.

12. **DOG BITE LIABILITY INSURANCE.** If Landlord has authorized Resident to keep a dog or dogs at the Residence under this Addendum, Resident shall obtain and maintain a personal liability policy that includes a minimum of $100,000 in dog bite liability coverage for all dogs at the Residence. If Resident's personal liability policy excludes coverage for any dog at the Residence, then Resident must obtain and maintain a separate, stand-alone dog bite liability insurance policy with at least $100,000 in liability coverage for each excluded dog in a policy form reasonably satisfactory to Landlord. Resident's liability is not limited to the amount covered by such insurance policy. Prior to receiving possession of the



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

Residence, Resident must provide proof of insurance and Landlord may demand proof of Resident's dog bite insurance policy at any time during the Lease Term. If Resident fails to provide proof of insurance prior to move-in, or fails to maintain insurance as required herein, Landlord may, but shall not be required to, obtain insurance on behalf of Resident (as Resident's agent), to the extent permitted by the laws of the jurisdiction in which the Residence is located, the cost of which (premium plus administrative charges), all as additional rent, will be added to Resident's monthly Rent. Failure to provide adequate proof of insurance to Landlord, in Landlord's sole judgment, shall constitute a breach of the Lease.

Proof of insurance, whether obtained through Get Covered or another insurance carrier, agent or broker, must be uploaded to:

https://invitationhomes.policyverify.io/upload-coverage-proof

Interested Party notifications (any notice of lapse in coverage or notice of cancellation of coverage) must be uploaded to:

https://getcovered.my.site.com/forms/s/resident-support?origin=invitationhomes.policyverify.io

or forwarded by U.S. Mail to:

Get Covered
PO Box 660121
Dallas, TX 75266

13. **SERVICE, ASSIST, AND COMPANION ANIMALS.** As permitted by Applicable Law, Landlord may require written verification of, or make other inquiries regarding, the disability-related need for a service, assist, or companion animal. Landlord will not charge a Pet Fee, Pet Rent or require additional insurance for any authorized service, assist, or companion animal. Except as provided by Applicable Law, all other provisions of this Addendum apply to service, assist, and companion animals.

14. **DESCRIPTION OF AUTHORIZED PETS.** Resident may keep only the Pets described below at the Residence. Resident may not substitute any other animals.

| | |
|---|---|
| Pet's name:<br>Type:<br>Breed:<br>Weight: | Pet's name:<br>Type:<br>Breed:<br>Weight: |
| Pet's name:<br>Type:<br>Breed:<br>Weight: | |

15. **REPRESENTATIONS.** Resident represents and warrants that none of the above Pets have any history or propensity for aggressive behavior or violent actions, including biting, scratching, chewing or otherwise. Resident represents to Landlord that the animals are housebroken or, if not, will be caged, and will be kept in good health and up to date on vaccinations. Resident agrees to provide proof of vaccinations and veterinarian records upon request by Landlord.



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

16. **NON-COMPLIANCE.** In the event Resident fails to disclose any Pet kept at the Residence to Landlord, in addition to the other remedies as provided by law, including serving notice and terminating the Lease, Landlord may charge Resident, in Landlord's sole discretion, a one-time non-compliance fee in the amount of $300, payable as additional Rent for that particular month.

17. **LIABILITY NOT LIMITED.** The Pet Fee and Pet Rent under this Addendum do not limit any Resident's liability for any damage to the Residence including, but not limited to, property damage, replacements, personal injury and death, cleaning, deodorization, and flea extermination.

18. **DAMAGES AND INDEMNIFICATION.** Residents will be jointly and severally liable for the entire amount of any damages or injuries caused by any animals. Resident agrees upon demand to reimburse Landlord for any and all damages caused by an animal, whether such damage is to the Residence or to any common areas used in conjunction with the Residence, and Resident shall indemnify, protect, defend, and hold Landlord harmless for, from, and against all claims, costs, actions, fees, or liability of any kind arising out of the Resident's keeping of any animal at the Residence.

19. **WAIVER.** No failure of Landlord to enforce any term of this Addendum will be deemed a waiver of that term or of any other provision of this Addendum, nor will any acceptance of a partial payment be deemed a waiver of Landlord's right to the full amount owed. Landlord's not enforcing or belatedly enforcing any terms of this Addendum shall not considered a waiver under any circumstances. Landlord's representatives (including personnel, employees, and agents) have no authority to waive, amend, or terminate this Addendum or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose any obligations on Landlord unless in writing.

20. **CONTROLLING PROVISIONS.** In the event of any conflict between the terms of this Addendum and the Lease, the terms of this Addendum shall control.

[Signature Page Follows]


Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

**RESIDENT:**
**On Behalf of Landlord:**

Signature: DocuSigned by: Tamerlane Bey II CDFAAC7E3F0947E...
Name: Tamerlane Bey II

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

**PROPERTY MANAGER**

By: ____________________

Tim Lobner
Chief Operating Officer
THR Property Management L.P



Confidential and Proprietary – ©2025 Invitation Homes. All Rights Reserved.

invitation homes

# INTERNET PACKAGE ADDENDUM

This Internet Package Addendum ("**Addendum**") dated 4/21/2026 **("Effective Date")** is part of that certain lease dated 4/21/2026 (the "**Lease**"), by and between 2018-4 IH Borrower LP ("Landlord"), with THR Property Management acting as the designated agent of Landlord ("Property Manager") and the undersigned residents as ("**Resident**"). Capitalized terms not defined in this Addendum shall have the same meaning as in the Lease.

1. **DESCRIPTION OF SERVICE.** Landlord has arranged for a third party service provider ("Telecommunication Provider") to make available certain services including high-speed internet and cable television including the infrastructure and systems to support such services ("Telecommunications") to Resident (collectively, "the Service").

2. **SERVICE.** From and after the Effective Date and until the expiration of the Lease Term as it is described in the Lease ("Term"), Landlord will make available the Service via the Hardware (as defined below) and Telecommunication Provider(s)' systems. **Resident must contact Landlord's vendor that manages administration of the Service, Onboard RS, Inc. ("Onboard") at onboardtoday.com/invitationhomes to setup an account in order to receive the Service.** Resident's use of the Service and any optional services or upgrades is subject to the standard terms and conditions of the Telecommunication Provider providing the Service, a copy of which is available in Attachment 1 to this Addendum. Resident acknowledges and understands that (a) Resident cannot change Telecommunication Providers, (b) Landlord does not provide end user support for the Service and Resident is to report any Service problems with the Service or additional services directly to the Onboard and (c) the Service comes with the Lease regardless of whether Resident intends to use the Service or not and that Resident will be responsible for the Internet Package Fee (as defined below) for Term.

3. **ACKNOWLEDGEMENT OF HARDWARE.** Resident acknowledges that Landlord has provided or, during the Term, may provide various hardware and other Telecommunications components necessary to the operation, maintenance and functioning of the Service, including, but not limited to an internet modem and router ("IH Hardware") and, at the request of Resident, up to one (1) high-definition receivers ("Resident Hardware"). Resident understands and agrees that Resident must contact Onboard in order to receive the high-definition receivers. Resident agrees to provide Landlord and its Telecommunication Provider with access to the Residence at such times as may be reasonably requested by Landlord or Telecommunication Provider for purposes of installing, maintaining or replacing the IH Hardware or Resident Hardware. Resident agrees to maintain and keep in good care and condition all IH Hardware and Resident Hardware. Resident may not: (a) remove any IH Hardware from the Residence; (b) tamper with IH Hardware or (c) interfere with the operation of any IH Hardware, Resident Hardware or any other Service functionality. Resident acknowledges that all IH Hardware is and shall remain, during and after the Term, the sole property of Landlord, and Resident shall have no ownership thereof or right thereto except in connection with Resident's use of the Residence during the Term. Resident shall be solely responsible for the full cost of the Hardware should Resident damage, uninstall or interfere with the Telecommunications system, including all installation, service, and maintenance fees. Resident agrees to promptly notify Onboard in the event the Service or any IH Hardware or Resident Hardware is not functioning in accordance with the advertised specifications. Resident shall reimburse Landlord, immediately upon demand as additional rent, for any amounts expended by Landlord in connection with Resident's

Docusign Envelope ID: 7EF678FB-38E1-4F0A-8673-B7F93FAF109D

breach of this Section 3. Resident's failure to so reimburse Landlord within five (5) days of such demand shall constitute a default by Resident under the Lease, and Landlord shall thereafter be entitled to any and all remedies available to Landlord in connection with a Resident Default under the Lease. In the event Resident receives any Resident Hardware, Resident acknowledges and agrees that Resident is responsible for returning such Resident Hardware to Telecommunication Provider in accordance with the instructions of such Telecommunication Provider.

4. **OTHER HARDWARE.** Resident acknowledges and agrees that any additional telecommunication hardware or technology that Resident may obtain directly from a manufacturer, reseller or other third party ("Other Hardware") shall comprise part of the Telecommunications system at Resident's own risk, and that Resident shall be responsible for all costs associated with Other Hardware and Other Hardware's integration into, or access to, the Service. Other Hardware will be provided pursuant to the terms and conditions of the applicable manufacturer, reseller or other third party, and Landlord shall have no responsibility to Resident for the availability or performance of such Other Hardware.

5. **PRICING AND PAYMENT.** Resident shall pay to Landlord, as additional rent the corresponding amount outlined on the Summary Page ("Internet Package Fee"). The terms of the Lease applicable to the monthly Rent, including, but not limited to, due dates and payment methods, shall apply to this Internet Package Fee. Resident acknowledges and agrees that Landlord does not provide the Service directly but, rather, through Telecommunications Provider. As a result,. Resident will be required to contact Onboard directly to inquire about any service credits or to report service issues.

6. **OPTIONAL SERVICES AND UPGRADES.** Resident may contact Telecommunications Provider directly to purchase additional, upgraded services from Telecommunications Provider. Telecommunications Provider will bill Resident separately for any purchased additional services. Resident will not pay Landlord for any additional services.

7. **CONSENT TO RECEIVE ELECTRONIC COMMUNICATION.** Resident consents to receiving electronic and other forms of communication, including via texting, from Landlord and its authorized service providers regarding the Service, including Onboard, the Internet Package Fee, or anything else related to Landlord's provision of the Service.

8. **CONSENT TO TRANSFER OF PERSONAL INFORMATION.** Resident acknowledges and agrees that the provision of the Service may require Landlord to transmit certain personal information of Resident to its Telecommunications Providers and hereby consents to the transfer of such personal information. Resident further acknowledges and agrees that any personal information transferred to Telecommunications Providers will be subject to the privacy policies and procedures implemented by such Telecommunications Provider, which such policies and procedures may differ from those that have been implemented by Landlord.

9. **NO LANDLORD LIABILITY.** Landlord shall not be liable to Resident for any claim whatsoever, including, but not limited to claims resulting from the failure or malfunction of the Service, Hardware or the Telecommunications system, any inability to access the Residence or to use any other feature provided by the Service, or any invasion of privacy, intrusion upon seclusion or trespass claim related to the placement of the Hardware in the Residence.

10. **WARRANTY DISCLAIMER.** LANDLORD MAKES NO WARRANTY OF ANY KIND, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING WITHOUT LIMITATION, MERCHANTABILITY, FITNESS FOR A PARTICULAR USE OR THAT THE SERVICE WILL BE UNINTERRUPTED OR ERROR FREE, AND ALL SUCH WARRANTIES ARE HEREBY DISCLAIMED BY LANDLORD AND WAIVED BY RESIDENT TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW. THE SERVICE IS PROVIDED BY LANDLORD "AS IS" AND "AS AVAILABLE." RESIDENT ASSUMES ALL RISK FOR RESIDENT'S USE OF THE SERVICE, INCLUDING WITHOUT LIMITATION, INABILITY TO ACCESS THE RESIDENCE, LOSS OR DAMAGE TO ANY PERSONAL PROPERTY AS A RESULT OF USING THE SERVICE OR PERSONAL INJURY OR ANY OTHER HARM. IN NO EVENT DOES LANDLORD GUARANTEE THAT THE SERVICE OR ANY PORTION THEREOF, ARE ACCURATE, ERROR OR BUG FREE, THAT RESIDENT'S USE OF THE SERVICE WILL BE UNINTERRUPTED OR ERROR FREE, OR THAT THE SERVICE'S OPERATION WILL NOT NEGATIVELY AFFECT RESIDENT'S USE AND QUIET ENJOYMENT OF THE RESIDENCE. THIS SECTION APPLIES TO THE MAXIMUM EXTENT ALLOWED BY APPLICABLE LAW.

RESIDENT ACKNOWLEDGES AND AGREES THAT (A) THE PEROFRMANCE OF INTERNET SERVICES MAY VARY FROM TIME TO TIME BASED ON OVERALL NETWORK USAGE, ENVIRONMENTAL CONDITIONS, DEVICE LIMIATIONS, AND OTHER FACTORS, AND THAT NO MINIMUM TRANSMISSION SPEED, UP-TIME OR AVAILABILITY IS GUARANTEED AT ANY TIME; (B) ACCESS TO THE INTERNET MAY NOT BE SECURE, MAY BE MONITORED BY THIRD PARTIES NOT UNDER LANDLORD'S OR TELECOMMUNICATION PROVIDER'S CONTROL, MAY PROVIDE RESIDENT WITH ACCESS TO CONTENT, MERCHANDISE AND SERVICES THAT ARE NOT CONTROLLED OR PROVIDED BY LANDLORD AND FOR WHICH THERE ARE CHARGES PAYBLE TO THIRD PARTIES, AND IS AT RESIDENT'S SOLE RISK; (C) LANDLORD SHALL NOT BE LIABLE IN ANY WAY IN CONNECTION WITH ANY USE OF THE INTERNET BY RESIDENT, INCLUDING FEES INCURRED BY RESIDENT FOR THIRD PARTY CONTENT, PRODUCTS OR SERVICES, OR CIRCUMSTNACES WHERE THE USE OR LOSS OF INTERNET SERVICES RESULTS IN CHARGES BY THIRD PARTIES, FILE OR DATA CORRUPTION OR LOSS, HARDWARE OR SOFTWARE DAMAGE OR LOSS (INCLUDING FROM VIRUSES AND OTHER MALEVOLENT ACTS OR THINGS), LOSS OF IOT CONNECTIVITY, USE OR FUCTIONALITY, ETC. AND LANDLORD HAS NO OBLIGATION TO RESOLVE DISPUTES WITH SUCH THIRD PARTIES OR OTHER VENDORS; (D) LANDLORD MAKES NO WARRANTY AS TO THE SECURITY OF USER COMMUNICATIONS VIA THE TELECOMMUNICATION SYSTEM OR THE SERVICE, OR THAT THIRD PARTIES WILL NOT GAIN UNAUTHORIZED ACCESS TO OR MONITOR RESIDENT COMMUNICATIONS; AND (E) LANDLORD MAKES NO WARRANTY THAT DATA OR FILES SENT BY OR TO RESIDENTS WILL BE TRANSMITTED IN A SECURE, ENCRYPTED OR UNCORRUPTED FORM OR WITHIN A REASONABLE PERIOD OF TIME.

RESIDENT ACKNOWLEDGES AND AGREES THAT IT HAS NOT RELIED ON LANDLORD FOR ANY PRIVACY OR SECURITY ADVICE, SECURITY MONITORING, SECURITY EVENT MITIGATION, OR THREAT IDENTIFICATION IN CONNECTION WITH THE SERVICE OR RESIDENT'S IOT APPLICATIONS OR DEVICES, OR OTHER APPLICATIONS OR DEVICES (WHETHER BY RESIDENT, RESIDENT PARTIES OR THIRD PARTIES), CONNECTED TO THE SYSTEM. RESIDENT IS RESPONSIBLE FOR AND ASSUMES ALL LIABILITY OF ANY LOSS OF INFORMATION, SECURITY BREACHES OR INCIDENTS AND TRANSMISSION OF MALICIOUS THINGS OVER OR RELATED TO THE SERVICE, USERS' IOT APPLICATIONS OR DEVICES AND ANY OTHER APPLICATIONS OR DEVICES CONNECT TO THE TELECOMMUNICATION SYSTEM.

11. **LIMITATION OF LIABILITY.** IN NO EVENT WILL LANDLORD AND/OR ITS OFFICERS, DIRECTORS, EMPLOYEES, AGENTS OR REPRESENTATIVES BE LIABLE (i) FOR ANY INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY OR PUNITIVE DAMAGES RELATED TO OR

Docusign Envelope ID: 7EF678FB-38E1-4F0A-8673-B7F93FAF109D

ARISING FROM RESIDENT'S USE, MISUSE, OR INABILITY TO USE THE SERVICE, INCLUDING BUT NOT LIMITED TO, DAMAGES TO PERSONAL OR REAL PROPERTY OF ANY NATURE WHATSOEVER, PERSONAL OR BODILY INJURY, INCREASED ENERGY OR TELECOMMUNICATIONS EXPENSES, ANY DAMAGES RESULTING FROM UNAUTHORIZED ACCESS TO LANDLORD'S OR A TELECOMMUNICATION PROVIDER'S SERVERS, SERVER UNAVAILABILITY, AND ANY PERSONAL INFORMATION STORED THEREIN, HOWEVER CAUSED UNDER ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED, TO CONTRACT OR TORT AND WHETHER OR NOT EITHER PARTY WAS OR SHOULD HAVE BEEN AWARE OR ADVISED OF THE POSSIBILITY OF SUCH DAMAGE; (ii) FOR ANY CLAIM ATTRIBUTABLE TO ERRORS, OMISSIONS, OR OTHER INACCURACIES IN THE SERVICE OR DESTRUCTIVE PROPERTIES OF THE SERVICE, AND (iii) FOR ANY CLAIM RESULTING FROM RESIDENT'S NON-COMPLIANCE WITH OR BREACH OF THE TERMS HEREOF OR ANY APPLICABLE TERMS OF SERVICE FOUND ONLINE OR ANY OTHER STATE OR FEDERAL LAWS. IN NO EVENT SHALL LANDLORD'S AGGREGATE LIABILITY UNDER THIS ADDENDUM EXCEED THE TOTAL SUM OF MONIES PAID BY RESIDENT TO LANDLORD AS CONSIDERATION FOR USE OF THE SERVICE DURING THE TWELVE (12) MONTHS IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO SUCH LIABILITY.

12. **INDEMNIFICATION.** RESIDENT AGREES, AT RESIDENT'S EXPENSE, TO INDEMNIFY, DEFEND AND HOLD HARMLESS LANDLORD, ITS LICENSORS, AND THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS FROM AND AGAINST ALL DEMANDS, LIABILITIES, LOSSES, CLAIMS AND EXPENSES, INCLUDING ATTORNEY'S FEES, ARISING OUT OF (i) RESIDENT'S USE OF THE SERVICE, (ii) THIRD PARTY CLAIMS, ACTIONS OR ALLEGATIONS OF INFRINGEMENT BASED ON INFORMATION, DATA OR CONTENT RESIDENT SUBMITTED IN CONNECTION WITH THE SERVICE, (iii) ANY FRAUD OR MANIPULATION, OR OTHER BREACH OF THIS ADDENDUM, BY RESIDENT, (iv) THIRD PARTY CLAIMS, ACTIONS OR ALLEGATIONS BROUGHT AGAINST LANDLORD ARISING OUT OF RESIDENT'S USE OF THE SERVICE, OR (v) FOR ANY CLAIM WHATSOEVER RESULTING FROM RESIDENT'S OR RESIDENT'S AFFILIATES', EMPLOYEES', CONTRACTORS' OR AGENTS' BREACH OF THE CHILDREN'S ONLINE PRIVACY PROTECTION ACT OR ANY OTHER STATE OR FEDERAL PRIVACY OR INFORMATION SECURITY LAWS. LANDLORD RESERVES THE RIGHT, AT ITS OWN EXPENSE AND IN ITS SOLE DISCRETION, TO ASSUME THE EXCLUSIVE DEFENSE AND CONTROL OF ANY MATTER OTHERWISE SUBJECT TO INDEMNIFICATION BY RESIDENT.

13. **CONTROLLING PROVISIONS.** In the event of any conflict between the terms of this Addendum and the Lease, the terms of this Addendum shall control with respect to the subject matter hereof.

***Remainder of page left blank intentionally.***

Docusign Envelope ID: 7EF678FB-38E1-4F0A-8673-B7F93FAF109D

**RESIDENT:**

Signature: DocuSigned by: Tamerlane Bey II CDFAAC703F0947E
Name: Tamerlane Bey II

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

**PROPERTY MANAGER:**
**On Behalf of Landlord:**

By: ____________________

Tim Lobner
Chief Operating Officer
THR Property Management L.P

Docusign Envelope ID: 7EF678FB-38E1-4F0A-8673-B7F93FAF109D

**ATTACHMENT 1**
**to**
**INTERNET AND MEDIA ADDENDUM**

Below are the terms and conditions of certain Telecommunication Providers applicable to the Service. Resident acknowledges and agrees that the applicable terms and conditions must be followed and adhered to at all times and that it is Resident's responsibility to routinely review the applicable terms and conditions of the Telecommunication Provider that provides Service to the Residence.

| Telecommunication Provider | Terms and Conditions |
|---|---|
| AT&T | Terms applicable to internet services: https://www.att.com/legal/terms.HSIAAttTermsofService.html<br><br>Privacy Policy: https://about.att.com/privacy/privacy-notice.html<br><br>General terms of service: https://www.att.com/legal/terms.consumerServiceAgreement.html |
| DirecTV | Terms and Conditions: https://www.directv.com/legal/directv-stream-tos-eula-policy/<br><br>Privacy Policy: https://www.directv.com/privacy/video-privacy-policy/ |

Docusign Envelope ID: 7EF678FB-38E1-4F0A-8673-B7F93FAF109D

invitation homes

# SMART HOME ADDENDUM

This Smart Home Addendum ("**Addendum**") dated 4/21/2026 **("Effective Date")** is part of that certain lease dated 4/21/2026 (the "**Lease**"), by and between 2018-4 IH Borrower LP ("Landlord"), with THR Property Management L.P. acting as the designated agent of Landlord ("Property Manager") and the undersigned residents as ("**Resident**"). Capitalized terms not defined in this Addendum shall have the same meaning as in the Lease.

1. **DESCRIPTION OF SERVICE.** The Smart Home System ("System") gives Resident video doorbell, remote and keyless access capability, remote HVAC control and remote monitoring capabilities, as applicable, via the online dashboard and mobile application (collectively, "the Service").

2. **SERVICE.** From and after the Effective Date and until the expiration of the Lease Term as it is described in the Lease ("Term"), Landlord will make available the Service via the Hardware (defined below) and System.

3. **ACKNOWLEDGEMENT OF HARDWARE.** Resident acknowledges that Landlord has installed or, during the Term, may install various hardware and other System components necessary to the operation, maintenance and functioning of System, including, but not limited to an electronic lock system, video doorbell, digital thermostat, network connectivity hub, leak sensor and other wiring and fixtures (collectively, "the Hardware"). Resident agrees to provide Landlord and its third party service providers with access to the Residence at such times as may be reasonably requested by Landlord or such third party service providers for purposes of installing, maintaining or replacing the Hardware. Resident agrees to maintain and keep in good care and condition all Hardware. Resident may not: (a) remove any Hardware; (b) disconnect any Hardware from any power source; or (c) interfere with the operation of any Hardware or any other System functionality. Resident acknowledges that all Hardware is and shall remain, during and after the term of the Lease, the sole property of Landlord, and Resident shall have no ownership thereof or right thereto except in connection with Resident's use of the Residence during the term of the Lease. Resident shall be solely responsible for the full cost of the Hardware should Resident damage, uninstall or interfere with the System, including all installation, service, and maintenance fees. Resident agrees to promptly notify Landlord in the event any Hardware or the System is not functioning in accordance with the advertised specifications. Resident shall reimburse Landlord, immediately upon demand, for any amounts expended by Landlord in connection with Resident's breach of this Section 3. Resident's failure to so reimburse Landlord within five (5) days of such demand shall constitute a default by Resident under the Lease, and Landlord shall thereafter be entitled to any and all remedies available to Landlord in connection with a Resident Default under the Lease.

4. **OTHER HARDWARE.** Resident acknowledges and agrees that any additional smart home hardware or technology that Resident may obtain directly from a manufacturer, reseller or other third party ("Other Hardware") shall not comprise part of the System and shall not be subject to the terms or conditions of this Addendum, regardless of whether or not such Other Hardware is integrated into, or accessible through, the Service. Other Hardware will be provided pursuant to the



EQUAL HOUSING OPPORTUNITY

Docusign Envelope ID: 7EF678FB-38E1-4F0A-8673-B7F93FAF109D

terms and conditions of the applicable manufacturer, reseller or other third party, and Landlord shall have no responsibility to Resident for the availability or performance of such Other Hardware.

5. **PRICING AND PAYMENT.** Resident shall pay to Landlord, as additional rent, the amount set forth in the Summary paid on a monthly basis. The terms of the Lease applicable to the monthly Rent, including, but not limited to, due dates and payment methods, shall apply to this Smart Home Fee. Resident acknowledges and agrees that the provision of the Service may require Resident to obtain and maintain broadband internet access, wireless networking capabilities or other network connectivity and that the obtainment or maintenance of such connectivity may require the payment of additional fees to third party service providers, which such fees shall be the sole responsibility of Resident.

6. **CONSENT TO RECEIVE ELECTRONIC COMMUNICATION.** Resident consents to receiving electronic and other forms of communication from Landlord regarding the Service, the Smart Home Fee, or anything else related to Landlord's provision of the Service.

7. **CONSENT TO TRANSFER OF PERSONAL INFORMATION.** Resident acknowledges and agrees that the provision of the Service may require Landlord to transmit certain personal information of Resident to its third party service providers and hereby consents to the transfer of such personal information. Resident further acknowledges and agrees that any personal information transferred to Landlord's third party service providers will be subject to the privacy policies and procedures implemented by such third party service providers, which such policies and procedures may differ from those that have been implemented by Landlord.

8. **NO LANDLORD LIABILITY.** Landlord shall not be liable to Resident for any claim whatsoever, including, but not limited to claims resulting from the failure or malfunction of the Hardware or the System, any inability to access the Residence or to use any other feature provided by the Service, or any invasion of privacy, intrusion upon seclusion or trespass claim related to the placement of the Hardware in the Residence or the monitoring, capture, storage and/or accidental dissemination of personal information or other data that may be stored by the System.

9. **WARRANTY DISCLAIMER.** LANDLORD MAKES NO WARRANTY OF ANY KIND, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING WITHOUT LIMITATION, MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE. THE SERVICE IS PROVIDED BY LANDLORD "AS IS" AND "AS AVAILABLE." RESIDENT ASSUMES ALL RISK FOR RESIDENT'S USE OF THE SERVICE, INCLUDING WITHOUT LIMITATION, INABILITY TO ACCESS THE RESIDENCE, LOSS OR DAMAGE TO ANY PERSONAL PROPERTY AS A RESULT OF USING THE SERVICE OR PERSONAL INJURY OR ANY OTHER HARM. IN NO EVENT DOES LANDLORD GUARANTEE THAT THE SERVICE OR ANY PORTION THEREOF, ARE ACCURATE, ERROR OR BUG FREE, THAT RESIDENT'S USE OF THE SERVICE WILL BE UNINTERRUPTED OR ERROR FREE, OR THAT THE SERVICE'S OPERATION WILL NOT NEGATIVELY AFFECT RESIDENT'S USE AND QUIET ENJOYMENT OF THE RESIDENCE. THIS SECTION 9 APPLIES TO THE MAXIMUM EXTENT ALLOWED BY APPLICABLE LAW.

10. **LIMITATION OF LIABILITY.** IN NO EVENT WILL LANDLORD AND/OR ITS OFFICERS, DIRECTORS, EMPLOYEES, AGENTS OR REPRESENTATIVES BE LIABLE (i) FOR ANY INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY OR PUNITIVE DAMAGES RELATED TO OR ARISING FROM RESIDENT'S USE, MISUSE, OR INABILITY TO USE THE SERVICE, INCLUDING BUT NOT LIMITED TO, DAMAGES TO PERSONAL OR REAL PROPERTY OF ANY NATURE WHATSOEVER, PERSONAL OR BODILY INJURY, INCREASED ENERGY OR TELECOMMUNICATIONS EXPENSES, ANY DAMAGES RESULTING FROM UNAUTHORIZED ACCESS TO LANDLORD'S SERVERS, SERVER

Docusign Envelope ID: 7EF678FB-38E1-4F0A-8673-B7F93FAF109D

UNAVAILABILITY, AND ANY PERSONAL INFORMATION STORED THEREIN, HOWEVER CAUSED UNDER ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED, TO CONTRACT OR TORT AND WHETHER OR NOT EITHER PARTY WAS OR SHOULD HAVE BEEN AWARE OR ADVISED OF THE POSSIBILITY OF SUCH DAMAGE; (ii) FOR ANY CLAIM ATTRIBUTABLE TO ERRORS, OMISSIONS, OR OTHER INACCURACIES IN THE SERVICE OR DESTRUCTIVE PROPERTIES OF THE SERVICE, AND (iii) FOR ANY CLAIM RESULTING FROM RESIDENT'S NON-COMPLIANCE WITH OR BREACH OF THE TERMS HEREOF OR ANY APPLICABLE TERMS OF SERVICE FOUND ONLINE OR ANY OTHER STATE OR FEDERAL LAWS. IN NO EVENT SHALL LANDLORD'S AGGREGATE LIABILITY UNDER THIS ADDENDUM EXCEED THE TOTAL SUM OF MONIES PAID BY RESIDENT TO LANDLORD AS CONSIDERATION FOR USE OF THE SERVICE DURING THE TWELVE (12) MONTHS IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO SUCH LIABILITY.

11. **INDEMNIFICATION.** RESIDENT AGREES, AT RESIDENT'S EXPENSE, TO INDEMNIFY, DEFEND AND HOLD HARMLESS LANDLORD, ITS LICENSORS, AND THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS FROM AND AGAINST ALL DEMANDS, LIABILITIES, LOSSES, CLAIMS AND EXPENSES, INCLUDING ATTORNEY'S FEES, ARISING OUT OF (i) RESIDENT'S USE OF THE SERVICE, (ii) THIRD PARTY CLAIMS, ACTIONS OR ALLEGATIONS OF INFRINGEMENT BASED ON INFORMATION, DATA OR CONTENT RESIDENT SUBMITTED IN CONNECTION WITH THE SERVICE, (iii) ANY FRAUD OR MANIPULATION, OR OTHER BREACH OF THIS ADDENDUM, BY RESIDENT, (iv) THIRD PARTY CLAIMS, ACTIONS OR ALLEGATIONS BROUGHT AGAINST LANDLORD ARISING OUT OF RESIDENT'S USE OF THE SERVICE OR THE WEBSITE, OR (v) FOR ANY CLAIM WHATSOEVER RESULTING FROM RESIDENT'S OR RESIDENT'S AFFILIATES', EMPLOYEES', CONTRACTORS' OR AGENTS' BREACH OF THE CHILDREN'S ONLINE PRIVACY PROTECTION ACT OR ANY OTHER STATE OR FEDERAL PRIVACY OR INFORMATION SECURITY LAWS. LANDLORD RESERVES THE RIGHT, AT ITS OWN EXPENSE AND IN ITS SOLE DISCRETION, TO ASSUME THE EXCLUSIVE DEFENSE AND CONTROL OF ANY MATTER OTHERWISE SUBJECT TO INDEMNIFICATION BY RESIDENT.

12. **CONTROLLING PROVISIONS.** In the event of any conflict between the terms of this Addendum and the Lease, the terms of this Addendum shall control with respect to the subject matter hereof.

[Signature Page Follows]


EQUAL HOUSING OPPORTUNITY

Docusign Envelope ID: 7EF678FB-38E1-4F0A-8673-B7F93FAF109D

**RESIDENT:**

Signature: DocuSigned by: Tamerlane Bey II
Name: Tamerlane Bey II

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

Signature:
Name: ____________________

**PROPERTY MANAGER:**
**On Behalf of Landlord:**

By: ____________________

Tim Lobner
Chief Operating Officer
THR Property Management L.P



EQUAL HOUSING OPPORTUNITY

Pos #11

Fulton County Magistrate Court
***E-FILED***AB
Date: 8/13/2026 4:55 PM
Che Alexander, Clerk
26ED392744

**IN THE MAGISTRATE COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

2018-4 IH Borrower, LP
LANDLORD (Plaintiff),

vs.

Tamerlane Bey II and all others
TENANT (Defendant).

Civil Action File No: 26ED392744

**CONSENT AGREEMENT**

This case was ☐ mediated ☑ settled on the 13 day of August, 2026 and it appearing that the parties have resolved this matter ☐ through mediation ☐ by agreement, it is hereby ordered, pursuant to the request of the parties, that the case be removed from adjudication by the Court, and further that the agreement reached by the parties be made an order of the Court, NOW THEREFORE:

The parties agree that Plaintiff is entitled to a WRIT OF POSSESSION and judgment against Defendant(s) in the amount of $ 11190.35 rent for the following period: Through 8/27/26

☐ **The parties have agreed to the following:** ☑ **Conditioned upon the following:**

**WHEREFORE,** the parties agree that a WRIT OF POSSESSION will be issued:

☐ On ____________ ☐ Instanter ____________ (date)

☑ Upon Defendant's failure to pay Plaintiff $ 11190.35 on or before 8/27/26 and upon sworn application by Plaintiff that said rent is unpaid. Payments must be via certified funds

**FURTHER AGREED** that: (Applicable only if checked) In the event of default

☑ Plaintiff is entitled to recover judgment against Defendant(s) Tamerlane Bey II in the amount of $ 11190.35 plus court costs and interest as allowed by law and accruing hereafter.

☐ Upon Defendant's failure to comply as stated above, Plaintiff is entitled to recover judgment against Defendant(s) ____________ in the amount of $____________ plus court costs and interest as allowed by law and accruing hereafter, less any amounts paid.

☐ Defendant ____________ is entitled to recover judgment against Plaintiff ____________ in the amount of $ ____________.

☐ Plaintiff is entitled to draw down funds in the court registry ____________

DAG / [initials] The parties waive their right to petition for review.
Landlord Initials / Tenant Initials

Consented to:

Zonayl Greene 64201 (OSTT)
Landlord (Plaintiff)

Tenant (Defendant)

So Ordered this 13th day of August, 2026.

Judge, Magistrate Court of Fulton County

Rev. 02/2025 Form A

Fulton County Magistrate Court
***E-FILED***CR
Date: 9/2/2026 11:35 AM
Che Alexander, Clerk
26ED392744

# MAGISTRATE COURT OF FULTON COUNTY
## STATE OF GEORGIA
## APPLICATION TO EXECUTE WRIT OF POSSESSION

Case No. 26ED392744

2018-4 IH Borrower LP
Plaintiff
THE TOTTEN FIRM, LLC
5579 Chamblee-Dunwoody Rd, Ste B-136
Address

Atlanta, Georgia 30338
City State Zip

mft@tottenfirm.com
Email Address
TF#07980

vs.

Tamerlane Bey II, and All Other Occupants
Defendants(s)

172 N Mill Rd
Property Address
Atlanta, GA 30328
City State Zip

Application is hereby made to the Court for the issuance of a Writ of Possession due to the failure of the Defendant to:

______ file his/her answer, and Plaintiff has not accepted money.

______ comply with the Order of this Court dated__________, in that payment(s) of $__________, due on________were missed, and Plaintiff has not accepted money after that date.

X pursuant to Court's Order, and Plaintiff has not accepted money in the interim.

______ Other________________________________________

Sworn to /Subscribed/ filed before me
This 28 day of August, 2026.
[signature]
Deputy Clerk/ Notary Public

KATHRYN D. TOTTEN NOTARY EXPIRES GEORGIA 01-16-2027 PUBLIC DEKALB COUNTY, GA

This 28 day of August, 2026.
[signature]
Attorney/ Owner/ Agent Phone#
MATTHEW F. TOTTEN GA Bar No. 798589
*Scheduling – first available; call 404-905-6577 + e-mail mft@tottenfirm.com w/ first available date*

## WRIT OF POSSESSION

GEORGIA, FULTON COUNTY

**TO THE MARSHAL OR HIS LAWFUL DEPUTIES:**

You are hereby commanded to remove said Defendant together with his/her property hereon from said house and premises and to deliver full and quiet possession of same to the Plaintiff herein.

This______day of 9/16/2026.

[signature]
Judge, Magistrate Court of Fulton County
Paul R. Knighten, Judge

_____Vacated_____Settled _____Ejected _____Held up ____________________
Comments:

Deputy Marshal:____________________ Date: ________________

**Matthew Totten**

| | |
|---|---|
| **From:** | Timur Bey 2 <tbeyii@gmail.com> |
| **Sent:** | Friday, September 25, 2026 6:59 PM |
| **To:** | Matthew Totten |
| **Cc:** | Alexis.Blackburn@fultoncountyga.gov; LaCresia Solomon; Patricia Williams; Kiara Bradix; Angela Belton; Zhakerra Hughes; FCMarshal@fultoncountyga.gov; Carolyn stover; Central Evictions IH; FCMD.Evictions@fultoncountyga.gov |
| **Subject:** | FORMAL RESPONSE — 11 U.S.C. §§ 362(b)(22) & 362(l) / Prepetition Judgment and Writ |
| **Attachments:** | attachment 1.pdf |

**External Sender** - From: (Timur Bey 2 <tbeyii@gmail.com>) Learn More
This message came from outside your organization.

Counsel,

I am responding to your statement concerning the effect of my bankruptcy filing on the pending eviction and writ of possession.

For clarity, I am not asserting that the bankruptcy filing permanently vacates, reverses, or extinguishes the state-court judgment or writ.

My position is that your statement that a post-judgment/post-writ bankruptcy categorically does not invoke the statutory protections contemplated by 11 U.S.C. § 362(l) is broader than the language of the Bankruptcy Code and requires further legal analysis under the particular facts of this case.

## 1. Section 362(b)(22) expressly incorporates § 362(l)

11 U.S.C. § 362(b)(22) creates an exception to the automatic stay for the continuation of a residential eviction where a judgment for possession was obtained before the bankruptcy filing.

Critically, however, § 362(b)(22) expressly states that this exception is:

"subject to subsection (l)."

Therefore, the existence of a prepetition judgment for possession does not, standing alone, resolve whether the statutory procedure contained in § 362(l) applies.

## 2. Section 362(l) expressly addresses a prepetition judgment for possession

Section 362(l)(1) expressly contemplates the situation in which a debtor files bankruptcy after a judgment for possession has already been entered.

The statute establishes a procedure involving:

(1) the debtor's certification concerning whether applicable nonbankruptcy law permits the debtor to cure the entire monetary default after entry of the judgment for possession; and

(2) the required deposit with the Bankruptcy Court of the rent that would become due during the 30-day period following the bankruptcy filing.

Accordingly, the statutory analysis cannot end simply with the statement that the judgment or writ preceded the bankruptcy filing.

The actual question is whether the requirements of § 362(l) are satisfied under the applicable Georgia law and the specific judgment and writ involved here.

### 3. Official Form B101A confirms that this issue exists even when an eviction judgment already exists

Official Form B101A is specifically entitled:

"Initial Statement About an Eviction Judgment Against You."

The form contains a section entitled:

"Stay of Eviction"

and specifically addresses the:

"First 30 days after bankruptcy."

The Northern District of Georgia Bankruptcy Court's own published instructions identify 11 U.S.C. §§ 362(b)(22) and 362(l) as the applicable provisions.

The existence of Form B101A itself demonstrates that Congress contemplated a bankruptcy filing occurring after an eviction judgment had already been entered.

### 4. I acknowledge the Georgia authorities concerning post-writ cure

I have reviewed the Northern District of Georgia decisions addressing this precise issue, including *Newson-Pace v. New Columbia Residential*, AP No. 14-5354, and the Court's earlier decisions addressing § 362(l) and a prepetition writ of possession.

I understand that those decisions found § 362(b)(22) applicable where the debtor could not establish, under Georgia law, a right to cure the monetary default after issuance of the writ.

I am therefore not disputing that Georgia law is relevant.

Rather, that is precisely why I am requesting that you identify the specific Georgia authority and the specific language of the judgment/writ upon which you rely in asserting that § 362(l)(1)(A) cannot be satisfied in this particular case.

**5. Your statement should not be construed as establishing that § 362(l) is categorically unavailable**

The published Georgia bankruptcy decisions do not support the proposition that every bankruptcy filed after a writ of possession is categorically outside § 362(l).

They analyze whether the debtor had a right under applicable Georgia law to cure the monetary default after the judgment for possession.

That factual and legal inquiry is therefore material.

If you contend that my § 362(l) certification is legally unavailable, please identify:

- the specific Georgia statute;
- the controlling Georgia appellate authority;
- the specific provision of the judgment;
- the specific provision of the writ; and
- the authority establishing that, under the precise circumstances of this tenancy, there is no circumstance under which the monetary default may be cured after the judgment for possession.

**6. The Bankruptcy Court has a statutory mechanism for resolving a disputed certification**

Section 362(l)(3) expressly provides a procedure for a lessor to object to the debtor's certification.

Where the lessor objects, the Bankruptcy Court is authorized to determine whether the certification is true.

Accordingly, if your client disputes the factual or legal basis for my certification, I request that you identify whether your client intends to proceed under the statutory procedure provided by § 362(l)(3), rather than treating the issue as categorically resolved merely because the writ predates the bankruptcy filing.

**7. The filing and rent deposit**

For the record:

- The bankruptcy petition was filed September 25, 2026.

- Form B101A was filed concerning the eviction judgment.
- The applicable rent deposit was made with the Bankruptcy Court.
- Documentation concerning the state-court eviction matter was submitted to the Magistrate Court on September 25, 2026 at approximately 4:58 p.m.
- Magistrate Court envelope number: 23047848.

I am preserving the petition, Form B101A, deposit documentation, judgment, writ, filing confirmation, and all communications concerning notice.

## 8. Notice and preservation of the record

You and your client have now received actual notice of the bankruptcy filing and of my position concerning §§ 362(b)(22) and 362(l).

The Fulton County Marshal Department has likewise been notified.

This correspondence is being preserved and will be included in the federal bankruptcy record as appropriate.

I am not asking you to treat this email as a substitute for a filing with the Bankruptcy Court. I understand that matters requiring judicial determination must be presented through the appropriate federal-court procedure.

I am, however, placing you and your client on express notice that I dispute the characterization that the existence of the prepetition writ alone eliminates consideration of § 362(l).

## 9. Continued enforcement

If your client elects to continue pursuing execution of the writ, I request that counsel first address the applicability of § 362(l) and the statutory objection procedure provided by Congress.

If your client contends that no stay or § 362(l) protection exists, please identify the specific legal authority supporting that conclusion as applied to this particular case.

I reserve all rights and remedies available under the Bankruptcy Code and applicable law, including any remedies that may become available if an action is ultimately determined by the Bankruptcy Court to have violated an applicable stay.

This correspondence is intended to make the legal issue clear, preserve the record, and ensure that the parties proceed based upon the Bankruptcy Code and applicable Georgia authority rather than an assumption that every post-writ bankruptcy is automatically excluded from § 362(l).

Respectfully,

TAMERLANE BEY II
Debtor, Pro Se
Bankruptcy Case No.: 26-62896
(347) 542-8565
Tbeyii@gmail.com